Arnold AVANT, Appellant–Plaintiff,

v.

COMMUNITY HOSPITAL and Fitness Pointe Health Club, Appellees–Defendants.

No. 45A03–0409–CV–393.

Court of Appeals of Indiana.

April 12, 2005.

Publication Ordered April 28, 2005.

Transfer Denied July 26, 2005.

---

Nathaniel Ruff, Merrillville, IN, Attorney for Appellant.

Sharon L. Stanzione, Spangler, Jennings & Dougherty, P.C., Merrillville, IN, Attorney for Appellees.

## OPINION

CRONE, Judge.

### Case Summary

Arnold Avant appeals the trial court's order granting summary judgment to Community Hospital and Fitness Pointe Health Club (collectively, "Fitness Pointe"). We affirm.

### Issue

Avant presents two issues for our review, which we consolidate and restate as whether the trial court erred by granting summary judgment to Fitness Pointe.

### Facts and Procedural History

The facts most favorable to Avant, the nonmoving party, are as follows. Community Hospital owns and operates Fitness Pointe Health Club in Munster, Indiana. On September 28, 1998, Avant signed a "Member/Participant Waiver and Release from Liability" agreement ("Release"). The Release provides, in pertinent part, as follows:

> I promise and agree on behalf of myself, my heirs and assigns, not to sue and agree to release, discharge, and hold harmless and indemnify the Fitness Pointe, its agents, employees, members and all other personal [sic] or entities acting on its behalf from all claims, demands, rights and causes of action of any kind, whether arising from my own acts or those of Fitness Pointe. I hereby waive all claims for personal injury or property damage arising from my activities or use of the facilities and equipment at Fitness Pointe, and I accept, assume and incur all responsibility for the risk of injury from such activity and exercise.

Appellant's App. at 13. Upon signing the Release, Avant received a Fitness Pointe membership card. On April 25, 2000, Avant began using the services of a personal trainer, Tracy Oedzes, an employee of Fitness Pointe. He explained to Oedzes that his goals were to reduce his cholesterol and improve his general fitness. She designed a specific program for Avant, which included the use of various machines, weights, and a medicine ball. Oedzes was present each time Avant performed the fitness routine she developed for him. Avant alleges that the fitness routine caused him "serious injury, present and past medical expenses, present and past physical and emotional pain and suffering." *Id.* at 11.

On March 13, 2002, Avant filed a negligence claim against Fitness Pointe. On September 18, 2002, Fitness Pointe filed a motion to dismiss based upon its contention that the action should have been filed under the Indiana Medical Malpractice Act and thus the trial court lacked jurisdiction. The trial court denied Fitness Pointe's motion to dismiss on November 22, 2002, and it certified the issue for interlocutory appeal. On June 26, 2003, another panel of this Court affirmed the trial court's denial of the motion to dismiss. *Cmty. Hosp. & Fitness Pointe Health Club v. Avant,* 790 N.E.2d 585, 587 (Ind.Ct.App.2003). The trial court resumed jurisdiction on August 11, 2003. Fitness Pointe filed its motion for summary judgment on April 23, 2004, and the trial court granted the motion on August 13, 2004. The trial court's order states, in pertinent part,

> Upon review of Parties' supporting documentation and relevant case law, the Court now GRANTS Defendants' Motion as there is no genuine issue of material fact as to the issue of liability. Plaintiff's [admits] that she [sic] signed an exculpatory agreement with Defendant that clearly and specifically waives her [sic] right to pursue this personal injury claim against the Defendant.

Appellant's App. at 10. Avant now appeals.

## Discussion and Decision

■ Avant contends that the trial court erred in concluding that there is no genuine issue of material fact regarding the effect of the Release in barring his negligence claim against Fitness Pointe. Our standard of review is well settled:

Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. Review of a summary judgment motion is limited to those materials designated to the trial court. We must carefully review a decision on a summary judgment motion to ensure that a party was not improperly denied its day in court. Additionally, when material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts. When there are no disputed facts with regard to a motion for summary judgment and the question presented is a pure question of law, we review the matter de novo.

*Bennett v. CrownLife Ins. Co.*, 776 N.E.2d 1264, 1268 (Ind.Ct.App.2002) (some citations and quotation marks omitted). Construction of the terms of a written contract is a pure question of law, and thus we must conduct a de novo review of the trial court's decision to grant Fitness Pointe's motion for summary judgment. *See Park Hoover Village Condo. Ass'n, Inc. v. Ardsley/Park Hoover Ltd. P'ship*, 766 N.E.2d 13, 17 (Ind.Ct.App.2002), *reh'g denied.*

■ When reviewing the trial court's interpretation of a contract, we view the contract in the same manner as the trial court. *Exide Corp. v. Millwright Riggers, Inc.*, 727 N.E.2d 473, 478 (Ind.Ct.App. 2000), *trans. denied.* To determine the intent of the parties at the time the contract was made, we examine the language used to express their rights and duties. *Id.* Words used in a contract are to be given their usual and common meaning unless it is clear from the contract and the subject matter thereof that another meaning was intended. *Id.* Words, phrases, sentences, paragraphs, and sections of a contract cannot be read out of context. *Id.* If possible, the entire contract must be read together and given meaning. *Id.*

■ In the absence of legislation to the contrary, it is not against public policy in Indiana to enter into a contract that exculpates one from the consequences of his own negligence. *Marshall v. Blue Springs Corp.*, 641 N.E.2d 92, 95 (Ind.Ct. App.1994). However, in order to ensure a party's knowing and willing acceptance of this harsh burden, we have held that such exculpatory clauses must specifically and explicitly refer to the negligence of the party seeking release from liability. *See Powell v. Am. Health Fitness Ctr. of Fort Wayne, Inc.*, 694 N.E.2d 757, 761 (Ind.Ct. App.1998); *Moore Heating & Plumbing, Inc. v. Huber, Hunt & Nichols*, 583 N.E.2d 142, 146 (Ind.Ct.App.1991). An exculpatory clause may be found sufficiently specific and explicit on the issue of negligence even in the absence of the word itself. *See Moore*, 583 N.E.2d at 146.

In *Moore*, we upheld an indemnification agreement between a subcontractor and general contractor that stated in pertinent part:

[The subcontractor] agrees to indemnify the general contractor against any and all liability ... from any claim or cause of action of any nature arising while on or near the Job Site ... including claims relating to its ... employees ... for damages from any cause directly or indirectly relating to any action or failure to

act by [the subcontractor], its representatives, employees, subcontractors or suppliers, and whether or not it is alleged that [the general contractor] in any way contributed to the alleged wrongdoing or is liable due to a nondelegable duty.

*Id.* at 144. The agreement also stated that the subcontractor would indemnify the general contractor "to the fullest extent permitted by law" and that the subcontractor may not be obligated to indemnify the general contractor "for the sole negligence or willful misconduct where such indemnification is contrary to law." *Id.*

The subcontractor argued that this language failed to specifically and explicitly express its obligation to indemnify the general contractor for damages resulting from the general contractor's negligence. *Id.* at 146. Because the word "negligence" was not used except in a disclaimer of what would not be indemnified, the subcontractor claimed that its agreement to indemnify against the general contractor's negligence was, at best, implicit. We determined that the plain language of the entire exculpatory clause defined negligence as an area of its application and "unquestionably and expressly" addressed the subject of the subcontractor's agreement to indemnify the general contractor for the general contractor's negligence. *Id.* at 147.

The plain language of the Fitness Pointe Release is even clearer as to Avant's intent to indemnify Fitness Pointe for its negligence. The Release states that Avant agrees to indemnify Fitness Pointe for "all claims, demands, rights and causes of action of any kind, *whether arising from [Avant's] own acts or those of Fitness Pointe.*" Appellant's App. at 13 (emphasis added). Applying the plain meaning of these words, it is clear that the negligent design and implementation of a fitness program by a Fitness Pointe employee is an "act" for which Avant knowingly and willingly agreed to provide indemnification.

Avant argues that the word "acts" is too general to convey the intention of indemnity against *negligent* acts. However, in *Moore*, we noted that the exculpatory clause contained "the language of negligence"—words such as "liability," "damages," "actions," "omissions," "duties" and "causations"—and that, in context, such words "clearly, unequivocally, and expressly" showed that the clause applied to negligence. *Moore*, 583 N.E.2d at 146. Similarly, here, the Release includes the following terms generally associated with negligence: "claims," "causes of action," "acts," "damage," "responsibility," and "injury." Appellant's App. at 13. In the context of the entire exculpatory clause, these words clearly demonstrate that the Release encompasses negligence.

Avant also compares the Fitness Pointe Release to another health club membership agreement that we concluded was not effective in releasing the club from liability for its own negligence. *Powell*, 694 N.E.2d at 761–62. In that case, the exculpatory clause placed full responsibility upon the member for "any injuries, damages or losses which may occur . . . as a result of using the Club's facilities and equipment." *Id.* at 758. It also stated,

Member . . . does hereby fully and forever release and discharge the Club and all associated clubs, their owners, employees and agents from any and all claims, demands, damages, rights of action, or causes of action present or future, whether the same be known or unknown, anticipated or unanticipated, resulting from or arising out of Member's or Member's guest(s) use or intended use of said Club premises, facilities or equipment.

*Id.* The clause did not specifically contemplate the issue of indemnification for injuries and/or damages resulting from the Club's actions; in fact, there was no reference whatsoever to acts, actions, or conduct of the Club and its employees. Powell, a Club member who had signed the agreement, brought suit against the Club, alleging that its negligence caused her to suffer a foot injury while using a whirlpool on the premises. *Id.* We concluded as follows:

> Nowhere does the clause specifically or explicitly refer to the negligence of [the Club]. As a matter of law, the exculpatory clause did not release [the Club] from liability resulting from injuries [Powell] sustained while on its premises that were caused by its alleged negligence. Therefore, the exculpatory clause is void to the extent it purported to release [the Club] from liability caused by its own negligence.

*Id.* at 761–62.

Avant argues that we should reach the same conclusion here because the Fitness Pointe Release was similarly nonspecific as to the issue of indemnification for negligence. We disagree. As discussed above, an exculpatory clause need not include the word "negligence" so long as it conveys the concept specifically and explicitly through other language. *Moore,* 583 N.E.2d at 146. The clause at issue in *Powell* failed in both respects. In contrast, the plain language of this Release was specific and explicit as to Avant's agreement to indemnify Fitness Pointe for its negligence, including negligent acts of its employees. When Avant signed the Release, he knowingly and willingly accepted that burden. Therefore, the trial court did not err by granting Fitness Pointe's motion for summary judgment.

Affirmed.

RILEY, J., and ROBB, J., concur.

*ORDER*

This Court having heretofore handed down its opinion in this cause on April 12, 2005, marked Memorandum Decision, Not for Publication.

Come now the Appellees, by counsel, and file herein their Motion to Publish, alleging therein that said opinion clarifies a rule of law pertaining to exculpatory language contained in release agreements.

The Court having reviewed its opinion, having examined the Motion to Publish and being duly advised, now finds that said Motion should be granted and that this Court's opinion heretofore handed down as a Memorandum Decision should now be ordered published.

IT IS THEREFORE ORDERED that the Appellee's Motion to Publish is GRANTED. This Court's opinion heretofore handed down on April 12, 2005 marked Memorandum Decision, Not for Publication, is now ordered published.

All Panel Judges Concur.