Rebecca ANDERSON, Appellant–Plaintiff,

v.

**FOUR SEASONS EQUESTRIAN CENTER, INC. and Virginia Fox, Appellees–Defendants.**

No. 45A05–0601–CV–26.

Court of Appeals of Indiana.

Aug. 14, 2006.

Matthew J. Hagenow, Newby, Lewis, Kaminski & Jones, LLP, LaPorte, IN, Attorney for Appellant.

Claire Konopa Aigotti, Konopa, Reagan & Aigotti, P.C., South Bend, IN, Attorney for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff Rebecca Anderson ("Anderson") appeals the trial court's order granting summary judgment to Appellees–Defendants Four Seasons Equestrian Center, Inc. ("Four Seasons") and Virginia Fox ("Fox") (collectively, "the Defendants"). We affirm.

### Issue

Anderson raises one issue, which we restate as whether the trial court erred by granting summary judgment to the Defendants.[1]

### Facts and Procedural History

Fox is the owner of Four Seasons, which is an equestrian center that provides horse-riding instruction, horse boarding, summer camps, and pony parties.

Anderson took riding lessons at Four Seasons for approximately fifteen years, with most of those lessons provided by Fox.

In January 2000, Anderson signed a waiver and release form ("Waiver") that released Four Seasons from tort and civil liability. The Waiver provides, in part:

> With full understanding of the inherent risks involved in equine activity, some of which have been described in Paragraph I above,[2] *Participant [Anderson] agrees to waive, release and hold harmless Four Seasons Stable, Inc. from all tort and civil liability arising from or relating to participation in equine activity.* This Agreement to waive, release and hold harmless includes not only Four Seasons Stable, Inc. but their employees, agents and independent contractors whether they be trainers, instructors, veterinary personnel, farriers, equine care providers, and maintenance personnel and the like.

Appellant's App. at 92 (emphasis added). The Waiver explained that "equine activity" at Four Seasons included, among other things, "[r]iding, jumping, showing, trail riding, and the like ... [t]eaching instructing, and evaluating both rider and the equine [and] ... [r]outine care and feeding of the equine[.]" *Id.*

In May 2002, Anderson bought a horse from Fox and Four Seasons. Thereafter, Anderson paid to have Four Seasons board her horse[3] and sometimes paid a separate

---

1. We direct Anderson's attention to Indiana Appellate Rule 46(A)(10), which provides, in relevant part, that an appellant's brief "shall include any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal."

2. The Waiver enumerated some of the inherent risks in dealing with horses, including "[t]he propensity of an[] equine to behave in ways that may result in injury, death, or loss to persons on or around an equine ... [t]he unpredictability of an equine's reaction to sounds, sudden movements, unfamiliar objects, persons, or other animals;" and "[t]he potential of an equine activity Participant to act in a negligent manner that may contribute to injury, death, or loss to the person of the Participant or to other persons, including, but not limited to, failing to maintain control over an equine or failing to act within the ability of the Participant." Appellant's App. at 92.

3. The parties seem to disagree about whether they entered into a boarding contract. Anderson's affidavit contained in her designated evidence indicates that she signed a

fee to have her horse "turned out."[4] After Anderson bought her horse, she continued to take riding lessons at Four Seasons.

On March 3, 2003, Anderson went to Four Seasons to ride her horse. While Anderson was mounting her horse, the horse moved, and she fell and was injured. Anderson admitted to being engaged in an equine activity at the time of her fall. Also at that time, Four Seasons had a warning sign posted on the wall in front of the entrance door of the stable that provided:

### WARNING

UNDER INDIANA LAW, AN EQUINE PROFESSIONAL IS NOT LIABLE FOR AN INJURY TO, OR THE DEATH OF, A PARTICIPANT IN EQUINE ACTIVITIES RESULTING FROM THE INHERENT RISKS OF EQUINE ACTIVITIES.

Appellees' App. at 16–25. In Anderson's affidavit filed as part of her designated evidence on summary judgment, Anderson indicated that she never saw the warning

sign before the day she was injured and saw it only after she returned to Four Seasons after her injury.

In February 2005, Anderson filed a complaint against the Defendants and alleged that they were negligent in "caring for, conditioning and training" her horse. Appellant's App. at 40. The Defendants filed an answer, and later an amended answer, but did not include the defense of statutory immunity under Indiana Code Section 34–31–5–1[5] ("the Equine Activity Statute") in their list of affirmative defenses.

The Defendants then filed a motion for summary judgment and argued that: (1) the Equine Activity Statute barred Anderson's cause of action; and (2) the Waiver that Anderson signed in January 2000 barred Anderson's cause of action. The Defendants acknowledged that they had not raised immunity under the Equine Activity Statute in their affirmative defenses but asserted that they sought summary judgment upon it. Anderson responded to the Defendants' summary judgment motion and argued that: (1) there were genuine issues of material fact

contract with Four Seasons to board her horse, while Fox's affidavit contained in the Defendants' designated evidence indicates that Anderson did not sign a boarding contract. We note, however, that in the Defendants' answers to interrogatories, which they included as part of their designated evidence, they answered that they had entered into a "contractual agreement" with Anderson "for boarding a horse." Appellant's App. at 82. If, indeed, the parties entered into a written boarding contract, neither of the parties included a copy of a boarding contract in their designated evidence. Nevertheless, there is no dispute that Anderson paid to board her horse at Four Seasons.

4. The parties dispute what "turning out" a horse entailed. According to Four Seasons, turning out a horse meant letting a horse out to play in the paddock. On the other hand, Anderson understood that turning out a horse

involved actively supervising the exercise of the horse.

5. Indiana Code Section 34–31–5–1 provides:

(a) Subject to section 2 of this chapter, an equine activity sponsor or equine professional is not liable for:
(1) an injury to a participant; or
(2) the death of a participant;
resulting from an inherent risk of equine activities.
(b) Subject to section 2 of this chapter, a participant or participant's representative may not:
(1) make a claim against;
(2) maintain an action against; or
(3) recover from;
an equine activity sponsor or equine professional for injury, loss, damage, or death of the participant resulting from an inherent risk of equine activities.

regarding whether the statutory requirements of the Equine Activity Statute had been met—specifically, whether the Defendants had posted a warning sign in a clearly visible location in proximity to the equine activity and whether her injury resulted from an inherent risk of equine activity; and (2) the Waiver did not explicitly release the Defendants from their own negligence.

During the summary judgment hearing, Anderson argued, for the first time, that the Defendants had waived their statutory defense of immunity under the Equine Activity Statute because they failed to comply with Indiana Trial Rule 8(C) [6] by failing to affirmatively plead that defense in their answer. Also during the hearing, Anderson indicated that she did not contest that she had signed the Waiver but disputed whether the Waiver released only inherent risks of equine activities.

The trial court granted the Defendants' motion for summary judgment and issued an order, which provides in relevant part:

> The Court finds that the material facts are not in dispute and that defendants are entitled to summary judgment as a matter of law. [Anderson] was injured as a result of an inherent risk of equine activity and the [D]efendants are immune pursuant to I.C.34–31–5–1 et seq. [the Equine Activity Statute]. Further, [Anderson] waived any claim for the injury sustained. Finally, Virginia Fox owed no personal duty, nor did she breach any personal duty, owed to [Anderson].

Appellant's App. at 10.

## Discussion and Decision

### I. Standard of Review

 Our standard of review for a trial court's grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974. When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Dible v. City of Lafayette*, 713 N.E.2d 269, 272 (Ind.1999). In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. *Catt v. Bd. of Comm'rs of Knox County*, 779 N.E.2d 1, 3 (Ind.2002).

---

6. Indiana Trial Rule 8(C) provides:
 A responsive pleading shall set forth affirmatively and carry the burden of proving: Accord and satisfaction, arbitration and award, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, lack of jurisdiction over the subject-matter, lack of jurisdiction over the person, improper venue, insufficiency of process or service of process, the same action pending in another state court of this state, and any other matter constituting an avoidance, matter of abatement, or affirmative defense.

## II. Analysis

█ The sole issue is whether the trial court erred by granting summary judgment to the Defendants. The trial court granted summary judgment to the Defendants after concluding that they were immune under the Equine Activity Statute and that Anderson had waived any claim for the injury against the Defendants by signing the Waiver.

█ Anderson argues that the trial court erroneously granted summary judgment based upon statutory immunity under the Equine Activity Statute because: (1) the Defendants waived their affirmative defense of statutory immunity; and (2) even if not waived, there is a genuine issue of material fact regarding whether the statutory requirements of the Equine Activity Statute were met. Anderson also argues that the trial court erroneously granted summary judgment based upon her signed Waiver because "[t]he word 'negligence' is not contained in the [Waiver], nor is there any language to the effect that the waiver and release applied to Four Seasons' own negligence." [7] Appellant's Br. at 19. We first review the latter of Anderson's contentions of error regarding the effect of the Waiver.

Anderson argues that the trial court erroneously granted summary judgment based upon her Waiver because there is no language in the Waiver indicating that Four Season was being released from its own negligence. The Defendants argue that the Waiver barred Anderson's lawsuit because Anderson agreed to release Four Seasons from any tort or civil liability aris-ing from her participation in equine activity, and Anderson admitted to being engaged in equine activities at the time she was injured. The Defendants also argue that it was not necessary for the Waiver to explicitly refer to Four Seasons' negligence because Anderson's injury was derived from a risk inherent in the nature of the activity of horse riding.

█ It is well settled in Indiana that exculpatory agreements are not against public policy. *Marsh v. Dixon*, 707 N.E.2d 998, 1000 (Ind.Ct.App.1999), *trans. denied.* Generally, parties are permitted to agree that a party owes no obligation of care for the benefit of another, and thus, shall not be liable for consequences that would otherwise be considered negligent. *Id.* However, we have held that such exculpatory clauses must specifically and explicitly refer to the negligence of the party seeking release from liability. *Avant v. Cmty. Hosp.*, 826 N.E.2d 7, 10 (Ind.Ct.App.2005) (citing *Powell v. Am. Health Fitness Ctr. of Fort Wayne, Inc.*, 694 N.E.2d 757, 761 (Ind.Ct.App.1998), *trans. denied; Moore Heating & Plumbing, Inc. v. Huber, Hunt & Nichols*, 583 N.E.2d 142, 146 (Ind.Ct. App.1991)). An exculpatory clause may be found sufficiently specific and explicit on the issue of negligence even in the absence of the word itself. *Avant*, 826 N.E.2d at 10 (citing *Moore*, 583 N.E.2d at 146). Furthermore, "an exculpatory clause not referring to the negligence of the releasee may act to bar liability for those damages incurred which are inherent in the nature of the activity[.]" *Marsh*, 707 N.E.2d at 1000. "The requirement of specificity is only necessary when the risk of harm is a

---

**7.** On appeal, Anderson also argues that the Waiver was not a valid, binding contract. Anderson did not present this argument to the trial court. It is well settled that arguments not presented to the trial court on summary judgment are waived on appeal. *King v. Ebrens*, 804 N.E.2d 821, 826 (Ind.Ct.App. 2004). The trial court "cannot be found to have erred as to an issue or argument that it never had an opportunity to consider." *GKC Ind. Theatres, Inc. v. Elk Retail Investors, LLC.*, 764 N.E.2d 647, 651 (Ind.Ct.App.2002). Thus, Anderson has waived this argument, and we will not consider it on appeal.

latent danger, i.e. the defendant's own negligence." *Id.*

In *Moore v. Sitzmark Corp.,* the plaintiff bought some skis and bindings from the defendant-seller and had the defendant install the bindings on the skis and adjust them. 555 N.E.2d 1305, 1306 (Ind.Ct.App. 1990). The plaintiff signed a sales slip release, which provided, in part:

I understand that there are inherent and other risks involved in the sport for which this equipment is to be used, snow skiing, that injuries are a common and ordinary occurrence of the sport and I freely assume those risks. I understand that the ski boot binding system will not release at all times or under all circumstances, nor is it possible to predict every situation in which it will release and is therefore no guarantee for my safety. I therefore release the ski shop and its owners, agents and employees from any and all liability for damage and from the selection, adjustment and use of this equipment, accepting myself the full responsibility for any and all such damage or injury which may result.

*Id.* Thereafter, the plaintiff used her new skis and bindings and was injured when she fell and her binding did not release. *Id.* The plaintiff filed suit against the defendant, alleging claims of strict liability and negligent adjustment of her bindings.[8] *Id.* The defendant moved for summary judgment, and the trial court granted the defendant's motion. *Id.*

On appeal, we affirmed the grant of summary judgment to the defendant on the negligence claim based upon the release signed by the plaintiff. *Id.* at 1309.

Specifically, we noted that the plaintiff's complaint against the defendant alleged that it had been negligent in setting and adjusting the bindings and that these alleged acts of negligence were exactly those for which the plaintiff granted the defendant a release of liability when she signed the sales slip release. *Id.* Thus, we held that the trial court properly granted summary judgment to the defendant on the plaintiff's negligence claim.[9] *Id.*

In *Powell v. Am. Health Fitness Ctr. of Fort Wayne, Inc.,* the plaintiff signed a membership agreement to become a member of the defendant's health club. 694 N.E.2d at 759. The agreement contained an exculpatory clause, which provided, in relevant part:

Member expressly agrees that the Club will not be liable for any damages arising from personal injuries sustained by Member or his guest(s) in, on, or about the Club, or as a result of using the Club's facilities and equipment. Member assumes full responsibility for any injuries, damages or losses which may occur to Member or their guest(s) in, on, or about the Club premises or as a result of using the Club's facilities and equipment ... Member ... does hereby fully and forever release and discharge the Club ... from any and all claims, demands, damages, rights of action, or causes of action present or future, whether the same be known or unknown, anticipated or unanticipated, resulting from or arising out of Member's or Member's guest(s) use or intended use of said Club premises, facilities or equipment.

---

8. The plaintiff also brought suit against the manufacturer of ski bindings, alleging theories of strict liability and negligent design. *Moore v. Sitzmark Corp.,* 555 N.E.2d 1305, 1306 (Ind.Ct.App.1990).

9. We also reversed the trial court's grant of summary judgment on the strict liability claim based upon the grounds of incurred risk because there was no evidence showing that the plaintiff knew of a defect in the bindings. *Id.* at 1306–08.

*Id.* at 759. The plaintiff later injured her foot while using the whirlpool located on the defendant's premises. *Id.* Thereafter, the plaintiff filed suit against the defendant alleging that her injury was caused by the defendant's negligence. *Id.* The defendant filed a motion for summary judgment based upon the exculpatory clause, and the trial court granted the motion. *Id.*

On appeal, the plaintiff argued that the trial court had erred by granting summary judgment based upon the exculpatory clause because the release "did not explicitly state that a member was releasing the [defendant] health center from injuries resulting from the health center's own negligence." *Id.* at 760. We first reviewed the principle of specificity with regard to indemnity clauses, decided to apply the same requirement of specificity for exculpatory clauses, and held that "an exculpatory clause must both specifically and explicitly refer to the negligence of the party seeking release from liability." *Id.* at 760–761. Upon examination of the exculpatory clause, we concluded that such clause did not specifically or explicitly refer to the negligence of the defendant. *Id.* at 761. Therefore, we held that the exculpatory clause was "void to the extent it purported to release [the defendant] from liability caused by its own negligence[,]" and we reversed the trial court's grant of summary judgment to the defendant. *Id.* at 761–62.

In *Marsh v. Dixon,* the plaintiff decided to ride on a wind tunnel amusement ride, also known as the "Dyna Soar" ride, that was constructed by the defendant-owner of the ride. *Marsh,* 707 N.E.2d at 999. The Dyna Soar ride "simulates the experience of free-fall by projecting columns of air through a cable trampoline upon which patrons of the ride levitate[,]" and patrons of the ride are supposed to levitate only three to four feet from the ground. *Id.* at 999, 1001. The plaintiff signed a release discharging the defendant and all employees from liability in the event of an accident. *Id.* The release provided, in relevant part:

> I hereby fully and forever discharge and release ... Dyna–Soar Aerobatics, Inc. and all of the partners, directors, officers, employees, and agents for the aforementioned companies from any and all liability, claims, demands, actions, and causes of action whatsoever arising out of any damages, both in law and in equity, in any way resulting from personal injuries, conscious suffering, death or property damage sustained while flying Dyna–Soar.

*Id.* at 1000–01. While on the ride, the plaintiff fell off a column of air and injured his ankle. *Id.* at 999. The plaintiff then filed suit against the defendant, alleging claims of negligence and products liability. *Id.* The defendant filed a motion for summary judgment, which the trial court granted. *Id.*

On appeal, the plaintiff argued that the trial court erroneously granted summary judgment because the release he signed exculpating the defendant was not sufficient to release the defendant for its own negligence. *Id.* at 1000. We acknowledged the holding in *Powell* that "an exculpatory clause will not act to absolve the drafting party from liability unless it 'specifically and explicitly refer[s] to the negligence of the party seeking release from liability.'" *Id.* at 1000 (quoting *Powell,* 694 N.E.2d at 761). However, we expounded on this specificity requirement and noted "that an exculpatory clause not referring to the negligence of the releasee may act to bar liability for those damages incurred which are inherent in the nature of the activity" and that "[t]he requirement of specificity is only necessary when the

risk of harm is a latent danger, i.e. the defendant's own negligence." *Id.*

After reviewing the language of the exculpatory clause, we concluded that the release did not "specifically and explicitly refer to [the defendant's] own negligence." *Id.* at 1001. We then analyzed whether the plaintiff's injury was derived from a risk inherent in the nature of the activity, i.e., riding the Dyna Soar Ride. *Id.* We noted that the defendant had explained to the plaintiff that he would levitate only three to four feet from the ground; however, the plaintiff was shot fifteen feet in the air and was subsequently dropped to the ground. *Id.* We concluded that such a risk was not inherent in the nature of a wind tunnel ride. *Id.* Because the release did not specifically refer to the defendant's own negligence and because the plaintiff's damages were not inherent in the nature of the activity, we held that the trial court erred by granting summary judgment to the defendant based upon the release signed by the plaintiff. *Id.*

Using this case law as our guide, we review the exculpatory clause contained in the Waiver signed by Anderson and the circumstances of her injury. Anderson agreed to release the Defendants from liability relating to her participation in equine activity, and the designated evidence reveals that Anderson admitted that she was engaged in equine activity at the time of her injury. Anderson was injured when she attempted to mount her own horse, and her complaint alleged that the Defendants were negligent in "caring for, conditioning and training" Anderson's horse. Appellant's App. at 40. Anderson, however, had signed the Waiver agreeing to release Four Seasons "from all tort and civil liability arising from or relating to participation in equine activity." Appellant's App. at 92. The Waiver explained that "equine activity" at Four Seasons in-

cluded, among other things, "[r]iding, jumping, showing, trail riding, and the like ... [t]eaching instructing, and evaluating both rider and the equine [and] ... [r]outine care and feeding of the equine[.]" *Id.* In addition, the Waiver explained that there were risks inherent in dealing with horses and enumerated some of those inherent risks, including "[t]he propensity of and [sic] equine to behave in ways that may result in injury, death, or loss to persons on or around an equine" and "[t]he unpredictability of an equine's reaction to sounds, sudden movements, unfamiliar objects, persons, or other animals[.]" *Id.*

The Waiver did not specifically and explicitly refer to the Defendants' own negligence; however, that fact does not render the Waiver useless. As explained in *Marsh,* an exculpatory clause's lack of a specific reference to the negligence of a defendant will not always preclude the defendant from being released from liability—such as when a plaintiff has incurred damages that are inherent in the nature of the activity. *Marsh,* 707 N.E.2d at 1000; *see also Avant,* 826 N.E.2d at 10 (holding that an exculpatory clause may be found sufficiently specific and explicit on the issue of negligence even in the absence of the word itself). The Waiver cautioned that there were risks inherent in the nature of activity of dealing with horses and explained some of those risks, and Anderson was injured when attempting to mount her horse. Thus, we conclude that Anderson's damages incurred were inherent in the nature of the activity of horse riding. Furthermore, similar to *Moore,* the alleged acts of negligence in Anderson's complaint were exactly those for which she granted the Defendants a release of liability when she signed the Waiver. Accordingly, the trial court did not err by granting summary judgment to

the Defendants based upon Anderson's Waiver.

Because we affirm the trial court's grant of summary judgment based upon the Waiver, we do not address the propriety of the trial court's decision concerning immunity under the Equine Activity Statute. *See Catt,* 779 N.E.2d at 3 (noting that we may affirm a trial court's summary judgment ruling on any grounds supported by the record).

### Conclusion

For the foregoing reasons, we affirm the trial court's order granting the Defendant's motion for summary judgment.

Affirmed.

KIRSCH, C.J., and CRONE, J., concur.