# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**RANDALL W. GRAFF**
**ORFEJ P. NAJDESKI**
**LESLIE B. POLLIE**
Kopka, Pinkus, Dolin & Eads, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:

**JOSEF MUSSER**
Spitzer Herriman Stephenson
 Holderead Musser & Conner, LLP
Marion, Indiana

FILED

Aug 31 2012, 8:42 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| WABASH COUNTY YOUNG MEN'S CHRISTIAN ASSOCIATION, INC. f/k/a WABASH COMMUNITY SERVICE, <br><br> Appellant-Defendant, <br><br> vs. <br><br> TAYLOR M. THOMPSON, a minor, by next friends, BRIAN THOMPSON and CHARLENE THOMPSON, <br><br> Appellees-Plaintiffs. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> No. 85A05-1203-CT-138 |

APPEAL FROM THE WABASH CIRCUIT COURT
The Honorable Robert R. McCallen, III, Judge
Cause No. 85C01-1110-CT-839

**August 31, 2012**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Wabash County Young Men's Christian Association, Inc., ("YMCA") appeals the trial court's order denying its motion for summary judgment. The YMCA raises one issue which we revise and restate as whether the trial court erred in denying the YMCA's motion for summary judgment. We reverse.

The relevant facts follow. On October 13, 2011, Taylor Thompson, by next friends Brian Thompson and Charlene Thompson, filed a complaint against the YMCA alleging that she was at the premises known as the Field of Dreams which was owned by the YMCA on May 28, 2009, and was injured when she slid into second base while participating in the Wabash Metro Summer Baseball/Softball League.[1] The complaint alleged that the YMCA was negligent and violated its duty to protect Taylor by its failure to inspect, warn, and implement preventive measures designed to eliminate or reduce dangers posed by the condition of the second base "such that it was fixed as a rigid obstacle for participants to encounter while sliding into the base and, thereby, posing a clear safety hazard." Appellant's Appendix at 7. The complaint alleged that Taylor suffered serious and permanent physical injury.

On November 22, 2011, the YMCA filed a Motion to Dismiss And/Or Change of Venue Pursuant to Trial Rule 12(B)(6). The YMCA alleged that Charlene, Taylor's mother, executed a contractual document for Taylor's participation in the Wabash Metro Summer Baseball/Softball League, and the YMCA attached the document to the motion. The form contains the following statement:

---

[1] The complaint indicated that Taylor was seventeen years old at the time of the filing of the complaint.

2

> I (parent or guardian) Charlene Thompson hereby give permission for Taylor Thompson to participate in Metro League Baseball/Softball. I further understand that injuries can occur and will not hold the field, sponsor, coaching staff or league responsible for injury or medical expenses incurred while participating in practice or playing in a game. I also affirm that my child is physically fit to participate in athletic activities.

Id. at 12. The YMCA alleged that Taylor contractually agreed that there was an inherent risk to her participation in the softball game that could result in injury and that she contractually agreed that she would hold the YMCA, as alleged owner of the field, harmless for any injuries or medical expenses resulting from such injuries.

On December 22, 2011, Taylor filed a response to the YMCA's motion to dismiss and argued that "in the case of minors, a person claiming tort damages on behalf of the minor against another person has power to execute a release on the minor's behalf, however, the release must be approved by the Court before being effective." Appellant's Appendix at 14. Taylor also alleged that the document YMCA relies upon did not contemplate an injury from the negligent maintenance of the property, rather, it contemplates the foreseeable injuries which can inherently occur while playing baseball or softball. Taylor argued that the YMCA was not a party to the understanding evidenced by the document.

On December 30, 2011, the court held a hearing on the YMCA's motion. On January 18, 2012, the court denied the YMCA's motion to dismiss. On February 16, 2012, the YMCA filed a motion to certify the interlocutory order, which the court granted on February 21, 2012. On April 16, 2012, this court accepted jurisdiction pursuant to Ind. Appellate Rule 14(B).

3

The issue is whether the trial court erred by denying summary judgment to the YMCA. Initially, we note that the YMCA's motion to dismiss was filed pursuant to Ind. Trial Rule 12(B)(6) and attached the form completed by Taylor's mother. Therefore, we will review the YMCA's motion to dismiss as a motion for summary judgment. See Ind. Trial Rule 12(B) ("If, on a motion, asserting the defense number (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."); New Albany-Floyd Cnty. Educ. Ass'n v. Ammerman, 724 N.E.2d 251, 255 n.7 (Ind. Ct. App. 2000) ("Although the trial court specifically granted Holman's motion to dismiss and did not rule on his motion for summary judgment, we must nevertheless treat the former as a motion for summary judgment on review."); Galbraith v. Planning Dep't of City of Anderson, 627 N.E.2d 850, 852 (Ind. Ct. App. 1994) (treating the trial court's dismissal of plaintiff's complaint as a summary judgment for the defendant when plaintiff submitted an affidavit and the trial court acknowledged that it considered matters outside the pleadings).

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. Id. We must carefully

4

review a decision on summary judgment to ensure that a party was not improperly denied its day in court. Id. at 974. "[A] motion for summary judgment that is unopposed should be granted only if the designated materials, regardless of whether they stand unopposed by materials designated by the nonmovant, warrant it." Starks v. Village Green Apartments, 854 N.E.2d 411, 415 (Ind. Ct. App. 2006), abrogated on other grounds by Klotz v. Hoyt, 900 N.E.2d 1 (Ind. 2009).

In reviewing a grant of summary judgment we face the same issues as the trial court and follow the same process. Klinker v. First Merchants Bank, N.A., 964 N.E.2d 190, 193 (Ind. 2012). Under Trial Rule 56(C), the moving party bears the burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Id. If it is successful, the burden shifts to the nonmoving party to designate evidence establishing the existence of a genuine issue of material fact. Id.

"In order to prevail on a claim of negligence, a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach." Peters v. Forster, 804 N.E.2d 736, 738 (Ind. 2004). In negligence cases, summary judgment is "rarely appropriate." Rhodes v. Wright, 805 N.E.2d 382, 387 (Ind. 2004). "This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence." Id. Nevertheless, a defendant is entitled to judgment as a matter of law when

the undisputed material facts negate at least one element of the plaintiff's claim.  Id. at 385.

We initially address Taylor's argument that while Indiana law requires that a parent claiming tort damages on behalf of a minor against another person has power to execute a release on the minor's behalf, the release must be approved by the court to be valid.  Taylor cites Ind. Code § 29-3-9-7(b) which provides:

> Whenever a minor has a disputed claim against another person, whether arising in contract, tort, or otherwise, and a guardian for the minor and the minor's property has not been appointed, the parents of the minor may compromise the claim.  However, before the compromise is valid, it must be approved by the court upon filing of a petition requesting the court's approval.  If the court approves the compromise, it may direct that the settlement be paid in accordance with IC 29-3-3-1. If IC 29-3-3-1 is not applicable, the court shall require that a guardian be appointed and that the settlement be delivered to the guardian upon the terms that the court directs.

Taylor argues that "[n]o Indiana statute, rule, or decision authorizes a parent of a minor to sign a pre-tort waiver."  Appellee's Brief at 5.  Taylor also argues that "the Indiana statute requiring court approval of minor's claim settlement arises out of a public policy of favoring protection of minors with respect to contractual obligations" and "[t]he statute guards minors against improvident compromises made by their parents."  Id.

The YMCA argues that Taylor's reliance on Ind. Code § 29-3-9-7(b) "is misplaced and has no bearing on the subject matter at issue in this case, which involves a vastly different legal scenario having nothing to do with probating a disputed claim a minor has against another person."  Appellant's Brief at 8.  The YMCA also argues that if Taylor's argument is accepted, it would render all releases signed by parents to allow their children to participate in school and sporting events ineffective and meaningless.

6

The YMCA contends that "[i]t would be impossible for parents to obtain court approval for every release or hold harmless agreement for every club, hobby, camp, and sporting activity for each of their children." Id. at 9.

We observe that the referenced statute governs a post-injury claim and falls under Title 29, which governs probate law, and not the issue in this case. Further, Taylor does not point to any other authority indicating that the release form was invalid. Under the circumstances, we conclude that the release form is valid. See Bellew v. Byers, 272 Ind. 37, 38, 396 N.E.2d 335, 336 (1979) (addressing a minor's compromise claim in which the parent and natural guardian was paid an amount for the injuries to her three children in return for a release), abrogated on other grounds by Huffman v. Monroe Cnty. Cmty. Sch. Corp., 588 N.E.2d 1264 (Ind. 1992); Zivich v. Mentor Soccer Club, Inc., 696 N.E.2d 201, 206-207 (Ohio 1998) (holding that it was not appropriate to equate a pre-injury release with a post-injury release and that parents have the authority to bind their minor children to exculpatory agreements in favor of volunteers and sponsors of nonprofit sport activites where the cause of action sounds in negligence).

We next turn to whether the release applies to Taylor's injury. The YMCA argues that the release form applies to Taylor's action of sliding into second base during the softball game. The YMCA also argues that "one can take almost any on-field mishap and seek to couch it in terms of negligence by arguing for more padding, softer playing surfaces, rule changes, etc., but the fact remains that the injury arose because of a risk inherent in the game." Appellant's Reply Brief at 3. Taylor argues that the YMCA's repeated reference to her injury being the result of her sliding into second base without

7

referencing the accompanying allegations of the complaint that the injury was caused by the negligent maintenance of the second base is a glaring omission throughout the YMCA's argument.

"It is well established in Indiana that exculpatory agreements are not against public policy." Stowers v. Clinton Cent. Sch. Corp., 855 N.E.2d 739, 749 (Ind. Ct. App. 2006), trans. denied. "Generally, parties are permitted to agree that a party owes no obligation of care for the benefit of another, and thus, shall not be liable for consequences that would otherwise be considered negligent." Marsh v. Dixon, 707 N.E.2d 998, 1000 (Ind. Ct. App. 1999), trans. denied. However, this court has held that an exculpatory clause will not act to absolve a party from liability unless it "'specifically and explicitly refer[s] to the negligence of the party seeking release from liability.'" Id. (quoting Powell v. Am. Health Fitness Ctr. of Fort Wayne, Inc., 694 N.E.2d 757, 761 (Ind. Ct. App. 1998)). An exculpatory clause may be found sufficiently specific and explicit on the issue of negligence even in the absence of the word itself. Anderson v. Four Seasons Equestrian Ctr., Inc., 852 N.E.2d 576, 581 (Ind. Ct. App. 2006), trans. denied. Furthermore, an exculpatory clause not referring to the negligence of the releasee may act to bar liability for those damages incurred which are inherent in the nature of the activity. Id. The requirement of specificity is only necessary when the risk of harm is a latent danger, i.e. the defendant's own negligence. Id. at 581-582.

The form signed by Taylor's mother did not release the YMCA of liability for all negligent acts because the form did not contain any specific or explicit reference to the negligence of the YMCA or owner of the field. See Stowers, 855 N.E.2d at 749 ("The

8

Stowers' proposed instruction set out that the Release Forms did not absolve Clinton Central of liability for negligent acts if they did not contain language specifically referring to negligence; thus, it was a correct statement of the law."). Thus, we must determine whether Taylor's injury was derived from a risk inherent in the nature of the activity. See Anderson, 852 N.E.2d at 581 (holding that an exculpatory clause not referring to the negligence of the releasee may act to bar liability for those damages incurred which are inherent in the nature of the activity).

Sliding into second base, notwithstanding its rigidity, is an activity inherent in the nature of playing baseball or softball and we conclude that Taylor's injury was derived from a risk inherent in the nature of the activity. See id. at 584-585 (observing that the plaintiff was injured when attempting to mount her horse and concluding that the plaintiff's damages were inherent in the nature of the activity of horse riding and that the trial court did not err by granting summary judgment to the defendants). The release attached to the YMCA's motion to dismiss indicated that the owner of the field would not be responsible for any injury or medical expenses "incurred while participating in practice or playing in a game." Appellant's Appendix at 12. Based upon the language in the release, we conclude that the YMCA met its burden of making a *prima facie* showing that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law and that the burden then shifted to Taylor who did not designate any evidence to show that an issue of material fact existed. Accordingly, we conclude that the trial court erred by denying the YMCA's motion for summary judgment.

9

For the foregoing reasons, we reverse the trial court's denial of the YMCA's motion for summary judgment.

Reversed.

FRIEDLANDER, J., and PYLE, J., concur.