**FILED**

Oct 30 2024, 9:11 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



I N  T H E

# Court of Appeals of Indiana

Taliyah Brooks,

*Appellant-Plaintiff*

v.

USA Track & Field, Inc.,

*Appellee-Defendant*

---

October 30, 2024

Court of Appeals Case No.
23A-PL-1685

Appeal from the Marion Superior Court

The Honorable Patrick J. Dietrick, Judge

Trial Court Cause No.
49D12-2211-PL-41124

---

**Opinion by Judge Pyle**
Judge May concurs.
Judge Brown concurs in part, dissents in part with opinion.

**Pyle, Judge.**

## Statement of the Case

[1] Taliyah Brooks ("Brooks") filed a complaint for declaratory judgment and an injunction against USA Track & Field, Inc. ("USATF").[1] Specifically, Brooks sought to have the trial court declare that USATF's online waiver, release of liability, assumption of risk, and indemnity agreement ("the Waiver and Indemnity Agreement")[2] contained in USATF's membership documents was unenforceable, and she sought to enjoin USATF from enforcing the Waiver and Indemnity Agreement against her. In Brooks' complaint, she did not specifically raise a separate claim for negligence but addressed the elements of negligence and made clear that she was planning to raise tort claims after she had obtained a declaratory ruling about the enforceability of the Waiver and Indemnity Agreement.

[2] Both parties moved for summary judgment on the question of the enforceability of the Waiver and Indemnity Agreement, and they limited that question to Indiana law. The trial court granted USATF's summary judgment motion and denied Brooks' motion for partial summary judgment. Two days after the trial court had entered the orders on summary judgment, Brooks filed a motion to amend her complaint to add claims for gross negligence and willful misconduct

---

[1] USATF was incorporated in Virginia and has its principal place of business and corporate headquarters in Indianapolis, Indiana.

[2] The parties refer to the Waiver and Indemnity Agreement as the WIA.

and to add two additional defendants. The trial court denied Brooks' motion to amend her complaint.

[3] In this consolidated appeal, Brooks appeals from the following trial court orders: (1) the orders denying Brooks' motion for partial summary judgment and granting USATF's motion for summary judgment on Brooks' declaratory judgment claim regarding the enforceability of the Waiver and Indemnity Agreement under Indiana law; (2) the order denying Brooks' motion to amend her complaint. Concluding that the trial court did not err in its rulings on the summary judgment motions but that it did abuse its discretion by denying Brooks' motion to amend her complaint, we affirm in part, reverse in part, and remand to the trial court for further proceedings.

[4] We affirm in part, reverse in part, and remand.[3]

## Issues

1. Whether the trial court erred in its rulings on the parties' summary judgment motions regarding the enforceability of the Waiver and Indemnity Agreement under Indiana law.

2. Whether the trial court abused its discretion by denying Brooks' motion to amend her complaint.

## Facts

---

[3] We held an oral argument in this case on August 7, 2024 at the Indiana Statehouse. We thank the parties for their able advocacy.

In November 2022, Brooks, who is an athlete member of USATF, filed, in the Marion Superior Court, a complaint against USATF. Brooks filed the complaint after she had suffered heat-related injuries while competing in heptathlon events in the 2020 U.S. Olympic Track and Field Time Trials ("the Olympic Time Trials") in Eugene, Oregon on June 26-27, 2021.[4] In Brooks' complaint, she sought declaratory and injunctive relief. Specifically, she sought: (1) a declaratory judgment, under INDIANA CODE § 34-14-1-1, that the online Waiver and Indemnity Agreement contained in USATF's membership documents[5] was unenforceable in law or in equity because, if it were enforceable, it would prevent her from bringing any negligence claims and from suing for damages she had suffered at the Olympic Time Trials; and (2) an injunction preventing USATF from enforcing the Waiver and Indemnity Agreement against her if she were to raise any negligence claim against USATF.

The provisions of the Waiver and Indemnity Agreement that are at issue in this underlying case and on appeal are paragraph 2 and paragraph 4 and are set forth as follows:

> For and in consideration of USA Track & Field, Inc. ("USA Track & Field" or "USATF") allowing me, the registrant, to participate in the USA Track & Field sanctioned event I am

---

[4] Due to the COVID-19 pandemic, the 2020 Olympic Games and trials were held in 2021.

[5] Brooks had completed USATF's online registration form and had e-signed the registration form in June 2021.

registing for herein (the "Event" or "Events"); I, for myself, and on behalf of my spouse, children, guardians, heirs and next of kin, and any legal and personal representatives, executors, administrators, successors and assigns, hereby agree to and make the following contractual representations pursuant to this Waiver and Release of Liability, Assumption of Risk and Indemnity Agreement (the "Agreement");

* * * * *

2. I understand and acknowledge that participation in track & field, road running, race walking, cross country, mountain, ultra, and trail running Events is inherently dangerous and represents an extreme test of a person's physical and mental limits. I understand and acknowledge the risks and dangers associated with participation in the Event and sports of track & field and related activities, including without limitation, the potential for serious bodily injury, sickness and disease (including communicable disease), permanent disability, paralysis and loss of life; loss of or damage to equipment/property; exposure to extreme conditions and circumstances; contact with other participants, spectators, animals or other natural or manmade objects; dangers arising from adverse weather conditions; imperfect course or track conditions; land, water and surface hazards; equipment failure; inadequate safety measures; participants of varying skill levels; situations beyond the immediate control of the Event Organizers (as defined in Section 4 below); and other undefined, not readily foreseeable and presently unknown risks and dangers ("Risks"). I understand that these Risks may be caused in whole or in part by my own actions or inactions or the actions or inactions of others participating in or organizing the Event, and I hereby expressly assume all such Risks and responsibility for damages, liabilities, losses or expenses which I incur as a result of my participation in any Event, except to the extent caused by the gross negligence and/or willful misconduct of any of the Released Parties (as defined in Section 4 below).

\* \* \* \* \*

4. I hereby release, waive and covenant not to sue, and further agree to indemnify, defend and hold harmless the following parties, as relevant and applicable in each instance: USATF, its members, clubs, associations, sport disciplines and divisions; United States Olympic Committee (USOC); the event directors, the host organization and the facility, venue and property owners and operators upon which the Event takes place; and any other organizers, promoters, sponsors, advertisers, coaches and officials for this Event; law enforcement agencies and other public entities providing support for the Event; and each of their respective parent, subsidiary and affiliated companies, officers, directors, partners, shareholders, members, agents, employees and volunteers (Individually and collectively, the "Released Parties" or "Event Organizers"), with respect to any liability, claim(s), demand(s), cause(s) of action, damage(s), loss or expense (including court costs and attorneys' fees) of any kind or nature ("Liability") which may arise out of, result from, or relate in any way to my participation in the Event, except to the extent caused by the gross negligence and/or willful misconduct of any of the Released Parties. I further agree that if, despite this Agreement, I, or anyone on my behalf, makes a claim for Liability against any of the Released Parties, I will indemnify, defend and hold harmless each of the Released Parties from any such Liabilities which may be incurred as the result of such claim, except to the extent caused by the gross negligence and/or willful misconduct of any of the Released Parties, as relevant and applicable in each instance.

(App. Vol. 6 at 165). Brooks incorporated the challenged language of paragraph 2 and paragraph 4 into her complaint by citing those paragraphs verbatim.

Additionally, the Waiver and Indemnity Agreement contained the following paragraph at the end of the agreement:

> I hereby warrant that I (or the Guardian, if I am under the age of 18) am of legal age and competent to enter into this Agreement, that I have read this Agreement carefully, understand its terms and conditions, acknowledge that I will be giving up substantial legal right by accepting it (including the rights of my spouse, children, guardians, heirs and next of kin, and any legal and personal representatives, executors, administrators, successors and assigns), acknowledge that I have accepted this Agreement without any inducement, assurance or guarantee, and intent for my acceptance to serve as confirmation of my complete and unconditional acceptance of the terms, conditions and provisions of this Agreement. This Agreement represents the complete understanding between the parties regarding these issues and no oral representations, statements or inducements have been made apart from this Agreement. If any provision of this Agreement is held to be unlawful, void, or for any reason unenforceable, then that provision shall be deemed severable from this Agreement and shall not affect the validity and enforceability of any remaining provisions.

(App. Vol. 6 at 165).

In Brooks' complaint, she asserted that USATF had been "negligent" in the manner that it had conducted the Olympic Time Trials. (App. Vol. 2 at 47). Brooks further asserted that USATF owed her and her fellow USATF member athletes a "duty to promote, plan for, and protect the health, safety, and well-being of its member athletes[,]" that USATF had breached that duty, and that she had suffered injuries and losses as a result of that breach. (App. Vol. 2 at 39). Brooks, however, did not include a separate count or claim for negligence

in her complaint. Brooks asserted that, given the language and potential enforceability of the Waiver and Indemnity Agreement, she could not proceed with any negligence claims against USATF or related entities without exposing herself to serious financial loss.

[9] In December 2022, USATF filed a motion to remove Brooks' case to federal court. Brooks then filed a motion to remand the case back to state court, and she sought payment of costs, expenses, and fees for filing her remand motion. On March 7, 2023, the federal court entered an order in which it remanded the case back to the Marion Superior Court and granted Brooks' request for attorney fees and expenses.

[10] After the case had returned to the Marion Superior Court, Brooks filed a motion for partial summary judgment on her declaratory judgment claim in April 2023. Specifically, Brooks sought to have the trial court enter a declaratory judgment on the enforceability of the Waiver and Indemnity Agreement, which she asserted was impeding her from amending her complaint to add negligence and other tort claims against USATF. Brooks argued that the Waiver and Indemnity Agreement was contained in a contract of adhesion, was unconscionable, and was unenforceable as a matter of law under Oregon law. Brooks asserted that she sought expedited relief on this declaratory judgment so that she could pursue her negligence and tort claims against USATF prior to the relevant statute of limitations. Specifically, she requested the trial court to rule on her partial summary judgment motion before June 26, 2023 so that she

could amend her complaint to pursue negligence, gross negligence, and other tort claims against USATF.

[11] In May 2023, USATF filed a motion to dismiss Brooks' complaint with prejudice. USATF argued that Brooks had failed to comply with Indiana Trial Rule 9.2(A) by failing to attach a copy of the Waiver and Indemnity Agreement to her complaint. On May 11, 2023, the trial court held an emergency pretrial hearing. During that hearing, the parties noted that no discovery had yet occurred in the case. Brooks stated that she had had difficulty getting copies of documents because the forms she had completed had been online. She stated that she had received the language of the Waiver and Indemnity Agreement from USATF's insurer, who had informed Brooks that it intended to enforce the language therein. Brooks stated that she had recited verbatim the language in the complaint and had attached USATF's insurer's letter as an exhibit.

[12] Also during the hearing, the parties recognized that the statute of limitations deadline for Brooks' potential tort claims would run in June 2023. The trial court asked the parties if they were going to "get a tolling agreement put in[to] place on this or not?" (Tr. Vol. 2 at 6). The parties indicated that they had discussed a potential tolling agreement. USATF acknowledged that it "underst[oo]d" that Brooks "intend[ed] on someday bringing a negligence or a tort action against [USATF.]" (Tr. Vol. 2 at 7). USATF stated that Brooks' tort action would trigger USATF's ability to name nonparties and that it believed that a tolling agreement would negatively affect its ability to name nonparties. The trial court asked the parties whether a ruling granting Brooks'

partial summary judgment motion was a prerequisite to Brooks' ability to file a tort claim. USATF responded that a summary judgment ruling in Brooks' favor was not a prerequisite. The trial court also asked Brooks what would prevent her from seeking to amend her complaint to add her potential tort claims. Brooks stated that she was seeking the summary judgment ruling to get a declaratory judgment that the Waiver and Indemnity Agreement was unenforceable because she did not want to be subjected to the indemnification provision. Brooks added that a requirement to pay USATF's "entire cost of defense" was an "insurmountable barrier to her moving forward." (Tr. Vol. 2 at 12). Brooks further stated that if the trial court were to declare the Waiver and Indemnity Agreement to be enforceable, then she was "not going to go forward[,]" but if the trial court were to declare the Waiver and Indemnity Agreement to be unenforceable, then her intent was to file an amended complaint. (Tr. Vol. 2 at 12).

[13] On June 2, 2023, USATF then filed a response and cross-motion for summary judgment, asserting that Indiana law applied to the question of the enforceability of the Waiver and Indemnity Agreement because the USATF's online membership registration contained a provision that Indiana law would govern any agreements between USATF and its members. USATF asserted that Brooks had agreed to the Indiana law provision and to the Waiver and Indemnity Agreement when she had completed the USATF online membership registration. USATF argued that the trial court should rule that the Waiver and Indemnity Agreement was enforceable as a matter of law under Indiana law

and should grant summary judgment to USATF. Alternatively, USATF argued that the Waiver and Indemnity Agreement was valid and enforceable under Oregon law. USATF also filed a motion to strike portions of Brooks' affidavit and memorandum in support of her motion for partial summary judgment.

[14] Thereafter, on June 9, 2023, Brooks filed a response to USATF's summary judgment motion. Brooks titled her motion as a cross-motion for summary judgment. In her motion, Brooks argued, in part, that the Waiver and Indemnity Agreement was unconscionable and unenforceable under Indiana law. Specifically, she argued that Indiana law required an indemnification provision to be strictly construed and that the Waiver and Indemnity Agreement's indemnification provision did not contain language that expressly stated in clear and unequivocal terms that Brooks was to indemnify USATF for USATF's own negligence. Brooks also argued that the Waiver and Indemnity Agreement was contrary to public policy. Additionally, Brooks argued that the Waiver and Indemnity Agreement was unenforceable under Oregon law. She requested the trial court to declare that the Waiver and Indemnity Agreement did not bar her from asserting negligence and other tort claims against USATF for the injuries she had sustained when participating in the Olympic Time Trials. Brooks requested the trial court to issue an order on the summary judgment motions by June 24, 2023.

[15] USATF then filed a response to Brooks' summary judgment response on June 20, 2023. In that response, USATF argued that Brooks had misinterpreted the language of the Waiver and Indemnity Agreement. USATF asserted that the

Waiver and Indemnity Agreement required Brooks to release claims against USATF for USATF's own negligence under Indiana law, and it acknowledged that the Waiver and Indemnity Agreement did not exclude gross negligence and willful conduct from the exculpation and indemnification requirements.

[16] Also on June 20, 2023, the trial court held a summary judgment hearing on the parties' motions. During the summary judgment hearing, USATF noted that the case was in "its infantile stages" and that "[n]o discovery ha[d] occurred between the parties[.]" (Tr. Vol. 2 at 37). The parties agreed that the trial court's review of the summary judgment motions should focus only on whether the Waiver and Indemnity Agreement was enforceable under Indiana law. Brooks stated that her "position [wa]s appropriately characterized as simply the converse of [USATF's] position; [USATF's] position being that the indemnification agreement applies, and [Brooks' position] being [that] it's not enforceable." (Tr. Vol. 2 at 38).

[17] Brooks noted that her "statute of limitations period . . . [wa]s quickly evaporating" and argued that the interpretation of the Waiver and Indemnity Agreement stood between her and "her ability to submit a tort claim against [USATF.]" (Tr. Vol. 2 at 41). Brooks asked the trial court to "focus on the language of the [Waiver and Indemnity Agreement] and "to conclude that [Brooks] ha[d] not agreed to indemnify [USATF] for its own negligence" and that the Waiver and Indemnity Agreement did "not prevent her from bringing her claims forward." (Tr. Vol. 2 at 41). Brooks also asserted that, under the principles of contract interpretation and Indiana law, an indemnification

provision was required to be specific, unambiguous, and unequivocal. Brooks argued that none of those requirements had been met in the Waiver and Indemnity Agreement. She asserted, most notably, that the Waiver and Indemnity Agreement did not refer to the term negligence and did not expressly provide that USATF was exempting itself from its own negligence. Brooks also asserted that Indiana law requires indemnification agreements and exculpatory clauses to be strictly construed and argued that the language of the Waiver and Indemnity Agreement did not exempt USATF from its own negligence.

[18]    Additionally, Brooks argued that the language of the Waiver and Indemnity Agreement provided that the risks that Brooks assumed were only the situations beyond the immediate control of the event organizers and those situations that were not readily foreseeable or were unknown risks and dangers. Brooks contended that USATF knew the risks presented by the extremely hot weather, that the weather was foreseeable, and that USATF was able to control the timing of the track events. Lastly, Brooks argued that the Waiver and Indemnity Agreement was unconscionable and against public policy.

[19]    USATF argued that the waiver provision and the indemnification provision in the Waiver and Indemnity Agreement were both valid and enforceable. USATF acknowledged that the Waiver and Indemnity Agreement did not contain the words "of our own negligence" in these provisions but argued that the Waiver and Indemnity Agreement was nevertheless specific enough to meet the Indiana standard for an enforceable waiver provision and indemnity provision. (Tr. Vol. 2 at 65). USATF asserted that the indemnity provision in

the Waiver and Indemnity Agreement did not need to state that a party was going to indemnify a defendant for the defendant's own negligence "as long as [it] use[d] the language of negligence[.]" (Tr. Vol. 2 at 66). Additionally, USATF argued that the waiver provision was enforceable because the Waiver and Indemnity Agreement set forth some of the risks inherent to competing in an outdoor Olympic track event. Lastly, USATF argued that the Waiver and Indemnity Agreement was not unconscionable or against public policy because Brooks had voluntarily engaged in a recreational activity and that the Waiver and Indemnity Agreement did not relate to a public interest or a basic necessity of life.

[20] The following day, on June 21, 2023, the trial court issued two general summary judgment orders ("the June 2023 Orders"). In one order, the trial court denied Brooks' motion for partial summary judgment, and in the other order, the trial court granted USATF's summary judgment motion. The trial court also denied USATF's motion to dismiss and motion to strike.

[21] Two days later, on June 23, 2023, Brooks filed the following motions: (1) a motion to certify the June 2023 Orders for an interlocutory appeal; (2) a motion to amend her complaint to add additional claims and parties; and (3) a motion to stay the proceedings on her newly filed tort claims. In her motion to amend her complaint under Indiana Trial Rule 15, Brooks sought to add claims against USATF for negligence, gross negligence, recklessness, and willful and wanton conduct. Brooks also sought to add two additional defendants, Track Town Events, LLC ("Track Town Events") and Track Town USA, Inc. ("Track

Town USA"), both of whom were Oregon entities. Brooks attached her proposed amended complaint to her motion to amend. The clerk of the trial court served summonses on Track Town Events and Track Town USA.

[22] Thereafter, on July 10, 2023, USATF filed a motion to oppose Brooks' motions. USATF argued that the trial court should deny Brooks' motion to certify for an interlocutory appeal because the trial court's June 2023 Orders constituted final appealable orders and resolved all pending claims. Additionally, USATF asserted that, under INDIANA CODE § 34-14-1-1 of the Declaratory Judgment Act, an order in a declaratory judgment action is treated as a final judgment. USATF also argued that the trial court should deny Brooks' motion to amend her complaint because it was a nullity given the entry of a final judgment on her declaratory judgment claim. Alternatively, USATF argued that, if the trial court were to allow Brooks to amend her complaint, the causes of action in Brooks' amended complaint (negligence, gross negligence, recklessness, willful and wanton misconduct) were futile, prejudicial, and would cause undue delay. USATF argued that the trial court had ruled that the Waiver and Indemnity Agreement released and exculpated USATF from Brooks' negligence claims, thereby barring her from raising a negligence claim. USATF asserted that Brooks' gross negligence claims were futile because the allegations in her amended complaint did not rise to the level of gross negligence and because the claims would not survive a motion for summary judgment.

[23] Subsequently, on July 17, 2023, Brooks filed a reply in support of her motions to amend her complaint and for an interlocutory appeal. In regard to her amendment motion, Brooks asserted that the trial court had retained jurisdiction to rule on and permit her motion to amend her complaint. Brooks argued that the trial court should not allow USATF to use its summary judgment ruling to serve as a complete bar to Brooks' claims in her amended complaint. Additionally, Brooks pointed out that the Waiver and Indemnity Agreement did not bar her claims for gross negligence, recklessness, or willful and wanton misconduct and that USATF had acknowledged that fact in its summary judgment briefing.

[24] In regard to her interlocutory motion, Brooks disagreed that the June 2023 Orders were final orders, and she argued that the order granting summary judgment to USATF had not resolved all claims and issues in the case. Brooks pointed out that USATF's summary judgment motion had sought only a ruling that the Waiver and Indemnity Agreement was valid and enforceable under Indiana law, and she noted that the summary judgment motion did not seek to dismiss Brooks' complaint or to apply the Waiver and Indemnity Agreement to Brooks' claims. She also asserted that her original complaint had included the allegations necessary for a negligence claim. Brooks indicated that, despite her disagreement that the June 2023 Orders were final orders, she planned to file a notice of appeal to protect her appellate rights.

[25]     On July 20, 2023, Brooks filed a notice of appeal with this Court to commence an appeal of the June 2023 Orders. That appeal of the trial court's summary judgment orders was filed under Cause Number 23A-PL-1685 ("First Appeal").

[26]     On July 21, 2023, the trial court issued a general order addressing Brooks' pending motions. The trial court denied Brooks' motion to certify the June 2023 Orders for interlocutory appeal, denied Brooks' motion to amend her complaint, and denied her motion to stay the proceedings on her newly filed tort claims ("July 2023 Order"). The trial court did not provide any specific explanation on its reasoning for denying Brooks' motion to amend her complaint.

[27]     Shortly thereafter, on August 7, 2023, an attorney for Track Town Events and Track Town USA filed an appearance and sought an extension of time to respond to Brooks' amended complaint. The following day, the trial court granted the extension of time motion.

[28]     On August 18, 2023, Brooks then filed a motion to correct error or a clerical mistake in the trial court's July 2023 Order ("motion to correct error"). In her motion, she noted that the trial court had granted Track Town Events and Track Town USA's motion for an extension of time to respond to Brooks' amended complaint and that, therefore, it appeared that the trial court had actually intended to grant Brooks' motion to amend her complaint. As a result, Brooks requested the trial court to correct the record to reflect that it had granted Brooks' motion to amend her complaint.

[29] On August 22, 2023, Track Town Events and Track Town USA filed a motion for leave to withdraw their appearance and for the trial court to vacate its August 8, 2023 order that had granted their motion for extension of time to respond to Brooks' amended complaint. They asserted that they had been unaware that the trial court had previously denied Brooks' motion to amend her complaint. That same day, the trial court granted Track Town Events and Track Town USA's motion.

[30] Thereafter, USATF filed a response to Brooks' motion to correct error. USATF objected to Brooks' motion and requested the trial court to strike Brooks' motion to correct error based on a lack of jurisdiction. USATF asserted that Brooks' motion to correct error was filed to challenge the final judgment entered by the trial court in its June 2023 Orders. USATF noted that Brooks' appeal of the June 2023 Orders was pending before the Court of Appeals, which had acquired jurisdiction on July 28, 2023, when the clerk of the trial court issued its Notice of Completion of Clerk's Record in Brooks' First Appeal. Therefore, USATF argued that the trial court did not have jurisdiction to enter a ruling on Brooks' motion to correct error and that it should strike her motion from the record.

[31] On September 1, 2023, the trial court issued an order in which it granted USATF's motion to strike Brooks' motion to correct error. Following the trial court's ruling, Brooks filed a notice of appeal with this Court, on September 11, 2023, to appeal the trial court's July 2023 Order denying her motion to amend

her complaint ("Second Appeal"). Brooks then filed a motion to consolidate her Second Appeal with her First Appeal.

[32] USATF subsequently filed a motion to dismiss Brooks' Second Appeal, arguing that the July 2023 Order on Brooks' motion to amend her complaint was a nullity and void and that our Court lacked subject matter jurisdiction over the Second Appeal. Specifically, USATF asserted that the July 2023 Order on Brooks' motion to amend her complaint was a nullity and void because the trial court had been "divested of its jurisdiction" to consider Brooks' motion to amend where Brooks had filed her motion after the entry of a final judgment (the June 2023 Orders). (Appellee's App. Vol. 2 at 27). USATF argued that Brooks was improperly attempting to amend "her then-already dismissed complaint." (Appellee's App. Vol. 2 at 27).

[33] USATF also argued that, even if the July 2023 Order was not void, our Court lacked subject matter jurisdiction over the Second Appeal because the July 2023 Order denying Brooks' motion to amend her complaint was not a final judgment under Indiana Appellate Rule 2(H) and was instead an interlocutory order. Additionally, USATF argued that Brooks' filing of a motion to correct error following the July 2023 Order was an improper filing because her motion was filed after the entry of an interlocutory order. USATF also asserted that her motion to correct error, therefore, equated to a motion to reconsider and that it did not extend the time period for Brooks to appeal the July 2023 Order.

[34] Our Court, via our motions panel, denied USATF's motion to dismiss. The motions panel also granted Brooks' motion to consolidate her Second Appeal into her First Appeal.

[35] Thereafter, we held an oral argument in August 2024. Following the oral argument, USATF filed a notice of stipulation regarding indemnity, in which it "formally stipulate[d], in writing, that it will not seek indemnification from Taliyah Brooks for the declaratory-judgment action she filed against [USATF] on November 29, 2022, thereby commencing lower court Case Number 49D12-2211-PL-041124 and this appeal." (USATF's Notice of Stipulation).

[36] Brooks now appeals the June 2023 Orders and the July 2023 Order.

## Decision

[37] In this consolidated appeal, Brooks argues that the trial court erred when ruling on the following orders: (1) the June 2023 Orders granting summary judgment to USATF and denying summary judgment to Brooks on Brooks' declaratory judgment claim regarding the enforceability of the Waiver and Indemnity Agreement under Indiana law; and (2) the July 2023 Order denying Brooks' motion to amend her complaint to add claims against USATF for negligence, gross negligence, recklessness, and willful and wanton conduct and to add two additional defendants. We will, in turn, review the parties' arguments under the challenged orders.

**(1) The June 2023 Orders Granting and Denying Summary Judgment**

[38] Brooks' complaint set forth, in part, a claim for declaratory relief, in which she requested the trial court to enter a declaratory judgment that the Waiver and Indemnity Agreement was unenforceable. The parties filed summary judgment motions on the declaratory judgment issue and argued whether the Waiver and Indemnity Agreement was enforceable under Indiana law. The trial court entered the June 2023 Orders, granting USATF's summary judgment motion and denying Brooks' partial summary judgment motion. Therefore, the trial court determined or declared that the Waiver and Indemnity Agreement was enforceable under Indiana law.

[39] Before we proceed to the summary of the parties' arguments under the challenged June 2023 Orders, we pause to briefly review the purpose of a declaratory judgment. The Indiana Declaratory Judgment Act provides trial courts with the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." I.C. § 34-14-1-1. "The purpose of the Uniform Declaratory Judgment Act is to 'settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations.'" *ResCare Health Servs., Inc. v. Indiana Family & Soc. Servs. Admin. - Office of Medicaid Policy & Planning*, 184 N.E.3d 1147, 1155 (Ind. 2022) (quoting I.C. § 34-14-1-12). "When considering a motion for declaratory judgment, the test to be applied is whether the issuance of a declaratory judgment will effectively solve the problem, whether it will serve a useful purpose, and whether or not another remedy is more effective or efficient." *ResCare*, 184 N.E.3d at 1155 (cleaned up). "The primary purpose of declaratory relief is to

permit a plaintiff to obtain a declaration of its rights and liabilities *before* proceeding with a course of conduct for which it might be held liable[.]" *Mid-Century Ins. Co. v. Estate of Morris ex rel. Morris*, 966 N.E.2d 681, 688 (Ind. Ct. App. 2012) (emphasis added) (cleaned up), *trans. denied*. "The declaratory judgment statute was not intended to eliminate well-known causes of action or to substitute an appellate court for a tribunal of original jurisdiction, where the issues are ripe for litigation through the usual processes." *Ferrell v. Dunescape Beach Club Condominiums Phase I, Inc.*, 751 N.E.2d 702, 707 (Ind. Ct. App. 2001). Instead, "the purpose of a declaratory judgment action is to quiet and stabilize legal relations and thereby provide a remedy in a case or controversy when there is still an opportunity for peaceable judicial settlement." *Id.*

[40] On appeal, Brooks challenges the June 2023 Orders in which the trial court granted USATF's summary judgment motion and denied Brooks' partial summary judgment motion on the declaratory judgment issue of whether the Waiver and Indemnity Agreement was enforceable under Indiana law. In Brooks' appellate brief, she initially raised a procedural question and asserted, as she had below, that the trial court's June 2023 Orders did not constitute a final judgment because those orders did not resolve all claims and issues in the case. Specifically, Brooks asserted that the summary judgment ruling did not resolve her tort claims and that the trial court and the parties had agreed during the summary judgment hearing that the issues regarding the applicability of Oregon law were not being presented to the trial court for resolution. However,

during the oral argument before this Court, Brooks duly conceded that the June 2023 Orders did constitute a final judgment.

[41] The June 2023 Orders constituted a final judgment under INDIANA CODE § 34-14-1-1 of the Declaratory Judgment Act. Indiana Appellate Rule 2(H)(5) provides that "[a] judgment is a final judgment if . . . it is otherwise deemed final by law." INDIANA CODE § 34-14-1-1 provides, in part, that a trial court's order on a declaratory judgment claim or "declaration has the force and effect of a final judgment or decree." Additionally, our Court has held that "[d]eclaratory orders have the force and effect of a final judgment, and we review them in the same manner as other judgments." *2444 Acquisitions, LLC v. Fish*, 84 N.E.3d 1211, 1214 (Ind. Ct. App. 2017). Therefore, we move to the parties' substantive argument regarding the June 2023 Orders.

[42] In the trial court's June 2023 Orders, it granted USATF's summary judgment motion and denied Brooks' partial summary judgment motion on the interpretation of the Waiver and Indemnity Agreement under Indiana law. Our standard of review for summary judgment cases is well-settled. When we review a trial court's grant of a motion for summary judgment, our standard of review is the same as it is for the trial court. *Knighten v. E. Chi. Hous. Auth.*, 45 N.E.3d 788, 791 (Ind. 2015). Summary judgment is appropriate only where the moving party has shown that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). A trial court's grant of summary judgment is "clothed with a presumption of validity," and an appellant has the burden of demonstrating that

the grant of summary judgment was erroneous. *Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009) (cleaned up).

[43] Construction of a written contract, such as the Waiver and Indemnity Agreement in this case, is a question of law for which summary judgment is particularly appropriate. *Rusnak v. Brent Wagner Architects*, 55 N.E.3d 834, 840 (Ind. Ct. App. 2016), *trans. denied*. "When summary judgment is granted based on the construction of a written contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, or that any contract ambiguity can be resolved without the aid of a factual determination." *Id.* at 840-41. Because the interpretation of a contract involves a question of law, we review de novo such interpretation. *Id.* at 840.

[44] Therefore, in this appeal from the trial court's summary judgment orders on Brooks' declaratory judgment claim to interpret whether the Waiver and Indemnity Agreement is enforceable under Indiana law, we will conduct a de novo review of the Waiver and Indemnity Agreement. Accordingly, we will apply the relevant rules of contract interpretation. *See Henthorne v. Legacy Healthcare, Inc.*, 764 N.E.2d 751, 757 (Ind. Ct. App. 2002) ("Indemnity agreements are contracts subject to the rules and principles of contract construction."). We will "attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties[,]" and we will give the words used in a contract "their usual and common meaning unless, from the contract and the subject matter thereof, it is clear that some other meaning was intended." *GKN Co. v. Starnes Trucking,*

*Inc.*, 798 N.E.2d 548, 552 (Ind. Ct. App. 2003). Additionally, we note that "[w]ords, phrases, sentences, paragraphs, and sections of a contract cannot be read alone[,]" and "[t]he entire contract must be read together and given meaning, if possible." *Id.*

[45] In regard to the June 2023 Orders, Brooks argues that the trial court erred in its summary judgment rulings on the enforceability of the Waiver and Indemnity Agreement under Indiana law. Brooks does not contend that waiver and indemnification provisions are not allowed. Instead, she argues that USATF's waiver and indemnification provisions within the Waiver and Indemnity Agreement were unenforceable as a matter of law because the provisions did not contain clear and unequivocal language referring to negligence and did not explicitly provide that Brooks would be obligated to indemnify USATF for USATF's own negligence.

[46] Absent prohibitive legislation, "no public policy prevents the parties from contracting as they desire." *Moore Heating & Plumbing, Inc. v. Huber, Hunt & Nichols*, 583 N.E.2d 142, 145 (Ind. Ct. App. 1991). Indeed, in Indiana, exculpatory and indemnification agreements are not against public policy. *See id.* (discussing indemnification agreements); *Anderson v. Four Seasons Equestrian Ctr., Inc.*, 852 N.E.2d 576, 581 (Ind. Ct. App. 2006) (discussing exculpatory agreements), *trans. denied*. "Generally, parties are permitted to agree that a party owes no obligation of care for the benefit of another, and thus, shall not be liable for consequences that would otherwise be considered negligent." *Anderson*, 852 N.E.2d at 581. *See also Avant v. Cmty. Hosp.*, 826 N.E.2d 7, 10

(Ind. Ct. App. 2005) ("In the absence of legislation to the contrary, it is not against public policy in Indiana to enter into a contract that exculpates one from the consequences of his own negligence."), *trans. denied*. Moreover, "a party may contract to indemnify another for the other's own negligence." *GKN*, 798 N.E.2d at 552. "However, in order to ensure a party's knowing and willing acceptance of this harsh burden, we have held that such exculpatory [and indemnification] clauses must specifically and explicitly refer to the negligence of the party seeking release from liability." *Avant*, 826 N.E.2d at 10. *See also Moore*, 583 N.E.2d at 145 (explaining that such clauses must "define the area of application, that is, negligence," and "also define the cause of damages in terms of physical or legal responsibility, that is, to whom the clause applies").

[47] Therefore, we first must determine whether the Waiver and Indemnity Agreement "expressly defines negligence as an area of application in clear and unequivocal terms." *See Moore*, 583 N.E.2d at 146. Here, the Waiver and Indemnity Agreement provides that Brooks agreed to "release, waive and covenant not to sue, and further agree to indemnify, defend and hold harmless" the "Released Parties"[6] or "Event Organizers" "with respect to any liability,

---

[6] The Waiver and Indemnity Agreement defined the "Released Parties" or "Event Organizers" to include the following:

> USATF, its members, clubs, associations, sport disciplines and divisions; United States Olympic Committee (USOC); the event directors, the host organization and the facility, venue and property owners and operators upon which the Event takes place; and any other organizers, promoters, sponsors, advertisers, coaches and officials for this Event; law enforcement agencies and other public entities providing support for the Event; and each of their respective parent,

claim(s), demand(s), cause(s) of action, damage(s), loss or expense (including court costs and attorneys' fees) of any kind or nature ("Liability") which may arise out of, result from, or relate in any way to [her] participation in the Event" of the Olympic Time Trials. (App. Vol. 6 at 165). Our Court has explained that an exculpatory or indemnification clause "may be found sufficiently specific and explicit on the issue of negligence even in the absence of the word itself." *Avant*, 826 N.E.2d at 10. *See also Moore*, 583 N.E.2d at 146. For example, in *Moore*, the indemnification clause at issue used words such as "liability," "damages," "actions," "omissions," "duties," and "causations[,]" and we explained that these words constituted the "language of negligence" and "clearly, unequivocally, and expressly provide[d] that the indemnification clause applie[d] to negligence" in context of the indemnification clause. *Moore*, 583 N.E.2d at 146. *See also Avant*, 826 N.E.2d at 10 (concluding that the exculpatory clause's use of words generally associated with negligence—such as "claims," "causes of action," "acts," "damage," "responsibility," and "injury[,]"—"clearly demonstrate[d] that the [r]elease encompasse[d] negligence" in the "context of the entire exculpatory clause"). Because the Waiver and Indemnity Agreement used terms that constituted the "language of negligence," we conclude that the agreement sufficiently defined negligence as an area of application. *See Moore*, 583 N.E.2d at 146.

---

> subsidiary and affiliated companies, officers, directors, partners, shareholders, members, agents, employees and volunteers ([i]ndividually and collectively . . .)[.]

(App. Vol. 6 at 165).

[48] Next, we must determine whether the Waiver and Indemnity Agreement contains language that clearly and unequivocally provides that Brooks agreed to waive and indemnify USATF for USATF's own negligence. *See Moore*, 583 N.E.2d at 146. We conclude that it does. In reviewing the Waiver and Indemnity Agreement, we again note that the "[w]ords, phrases, sentences, paragraphs, and sections of [the Waiver and Indemnity Agreement] cannot be read alone[,]" and we must read the entire contract together and give it meaning. *GKN*, 798 N.E.2d at 552.

[49] Here, the Waiver and Indemnity Agreement, which includes the language of negligence, also set forth a list of specific "risks and dangers associated with participation in the Event" of the Olympic Time Trials. (App. Vol. 6 at 165). These risks included, in part, "the potential for serious bodily injury[;] . . . exposure to extreme conditions and circumstances; . . . dangers arising from adverse weather conditions; imperfect course or track conditions; . . . inadequate safety measures; . . . and other undefined, not readily foreseeable and presently unknown risks and dangers ('Risks')." (App. Vol. 6 at 165). The Waiver and Indemnity Agreement also provides that Brooks "underst[oo]d that these Risks may be caused in whole or in part by [her] own actions or inactions or the actions or inactions of others participating in or organizing the Event" of the Olympic Time Trials. (App. Vol. 6 at 165). She agreed to "assume all such Risks and responsibility for damages, liabilities, losses or expenses which [she] incur[red] as a result of [her] participation in any Event, except to the extent caused by the gross negligence and/or willful misconduct of any of the

Released Parties[.]" (App. Vol. 6 at 165). Additionally, the Waiver and Indemnity Agreement also provides that Brooks agreed to "release, waive and covenant not to sue, and further agree to indemnify, defend and hold harmless" the "Released Parties" "with respect to any liability, claim(s), demand(s), cause(s) of action, damage(s), loss or expense (including court costs and attorneys' fees) of any kind or nature ("Liability") which may arise out of, result from, or relate in any way to [her] participation in the Event" of the Olympic Time Trials, "except to the extent caused by the gross negligence and/or willful misconduct of any of the Released Parties." (App. Vol. 6 at 165). The Waiver and Indemnity Agreement contains yet another provision regarding indemnification, wherein it provides that Brooks "further agree[s] that if, despite this Agreement, [she], or anyone on [her] behalf, makes a claim for Liability against any of the Released Parties, [she] will indemnify, defend and hold harmless each of the Released Parties from any such Liabilities which may be incurred as the result of such claim, except to the extent caused by the gross negligence and/or willful misconduct of any of the Released Parties[.]" (App. Vol. 6 at 165).

[50] We find that *Moore* is instructive in our interpretation and analysis of the Waiver and Indemnity Agreement. In *Moore*, a subcontractor agreed to indemnify and hold harmless a general contractor "from any and all liability . . . from any claim or cause of action of any nature arising while on or near the Job Site[,]" including "claims relating to its . . . employees, or by reason of any claim or dispute of any person or entity for damages from any cause directly or

indirectly relating to any action or failure to act by [the subcontractor], its representatives, employees, subcontractors or suppliers" and claims "whether or not it is alleged that [the general contractor] in any way contributed to the alleged wrongdoing or is liable due to a nondelegable duty." *Moore*, 583 N.E.2d at 144. Additionally, the indemnification clause provided that the subcontractor would "not be obligated to indemnify [the general contractor] for the sole negligence or willful misconduct where such indemnification is contrary to law, but otherwise it is the intent of the parties that [the subcontractor] shall indemnify [the general contractor] to the fullest extent permitted by law for such liability[.]" *Id.* On appeal, our Court explained that "the words of the indemnification clause as a whole . . . unquestionably and expressly address the subject of a subcontractor's indemnification of [the general contractor] for [the general contractor's] own negligence" where the indemnification clause provided for "an expansive coverage of liability" and then stated "an exception for indemnification" for the general contractor's negligence. *Id.* at 147. Our Court also explained that the parties were "free to contract as they desired" and were free to include a provision in the contract that the one party would indemnify the other party for the other party's own negligence. *Id.* We determined that the language in the indemnification clause put the subcontractor on notice of the terms and that, when the subcontractor accepted the contract, it "knowingly and willingly accepted the burden to indemnify [the general contractor] for [the general contractor's] own negligence." *Id.*

[51] Similar to *Moore*, we conclude that the Waiver and Indemnity Agreement, when reviewed as a whole, clearly addresses the subject of Brooks' agreement to indemnify USATF for USATF's own negligence. The plain language of the agreement reveals that it provides for an expansive coverage of liability related to negligence and then specifically excludes Brooks' waiver and indemnification for USATF's gross negligence and willful misconduct. The Waiver and Indemnity Agreement's inclusion of the exculpatory and indemnification language put Brooks on notice of those terms, and her acceptance of the Waiver and Indemnity Agreement resulted in her agreement to indemnify USATF for USATF's own negligence but not for USATF's gross negligence or willful misconduct. Because the Waiver and Indemnity Agreement as a whole defines negligence as an area of application and clearly addresses the subject of Brooks' indemnification of USATF for USATF's own negligence, we conclude that the trial court did not abuse its discretion by granting USATF's summary judgment motion and denying Brooks' partial summary judgment motion on the declaratory judgment issue of whether the Waiver and Indemnity Agreement was enforceable under Indiana law.

[52] Brooks also argues that the trial court erred in its summary judgment rulings on the enforceability of the Waiver and Indemnity Agreement under Indiana law because the Waiver and Indemnity Agreement was against public policy and was unconscionable where the agreement was a contract of adhesion and USATF had superior bargaining power. We disagree.

"Whether a contract is against public policy in a particular situation is a question of law dependent on the circumstances of the particular case." *Hi-Tec Properties, LLC v. Murphy*, 14 N.E.3d 767, 773 (Ind. Ct. App. 2014), *trans. denied*. As stated above, exculpatory and indemnification agreements are not against public policy in Indiana. *See Moore*, 583 N.E.2d at 145 (discussing indemnification agreements); *Anderson*, 852 N.E.2d at 581 (discussing exculpatory agreements). "Our courts have long recognized and respected the freedom of parties to enter into contracts, and it is generally accepted that parties may allocate risk by contract as a matter of such freedom." *McAdams v. Foxcliff Estates Cmty. Ass'n, Inc.*, 92 N.E.3d 1144, 1149 (Ind. Ct. App. 2018) (cleaned up). Moreover, our supreme court has "emphasized the very strong presumption of enforceability of contracts that represent the freely bargained agreement of the parties." *Cont'l Basketball Ass'n, Inc. v. Ellenstein Enterprises, Inc.*, 669 N.E.2d 134, 139 (Ind. 1996) (citing *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1129-30 (Ind. 1995)). "However, some exceptions do exist where the parties have unequal bargaining power, the contract is unconscionable, or the transaction affects the public interest such as utilities, carriers, and other types of businesses generally thought to be suitable for regulation or which are thought of as a practical necessity for some members of the public." *McAdams*, 92 N.E.3d at 1149 (cleaned up).[7] An adhesion contract is "a standardized

---

[7] Additionally, our supreme court has explained that courts may refuse to enforce private agreements if the agreements "contravene statute, clearly tend to injure the public in some way, or are otherwise contrary to the declared public policy of Indiana." *Fresh Cut*, 650 N.E.2d at 1130. When determining whether a contract

contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Sanford v. Castleton Health Care Ctr., LLC*, 813 N.E.2d 411, 417 (Ind. Ct. App. 2004) (cleaned up), *trans. denied*. However, "[a] contract is not unenforceable merely because one party enjoys advantages over another[,]" and an adhesion contract "is not per se unconscionable." *Id.* To be considered unconscionable, the contract "must be such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept." *Id.* (cleaned up).

[54] Ultimately, we conclude that Brooks has not met her burden of showing that the trial court's grant or denial of summary judgment was erroneous on the basis of her unconscionability and public policy argument. *See McAdams*, 92 N.E.3d at 1149 ("The party appealing a summary judgment decision has the burden of persuading the appellate court that the grant or denial of summary judgment was erroneous."). Here, Brooks entered into the Waiver and Indemnity Agreement with USATF so that she could compete in the Olympic Time Trials. We "recognize[] and respect[] the freedom of [Brooks and USATF] to enter into [this] contract[.]" *See McAdams*, 92 N.E.3d at 1149.

---

is prohibited by public policy, our Courts will balance the following relevant considerations: (1) the nature of the subject matter of the contract; (2) the strength of the public policy underlying the statute; (3) the likelihood that refusal to enforce the bargain or term will further that policy; (4) how serious or deserved would be the forfeiture suffered by the party attempting to enforce the bargain; and (5) the parties' relative bargaining power and freedom to contract. *Cont'l Basketball Ass'n,*, 669 N.E.2d at 140 n.9; *Fresh Cut*, 650 N.E.2d at 1130.

Additionally, we note that "[a] contract is not unenforceable merely because one party enjoys advantages over another." *Sanford*, 813 N.E.2d at 417. Based on our review of the record before us, consideration of the parties' arguments, and the balancing of the relevant considerations, we conclude that the Waiver and Indemnity Agreement is neither contrary to public policy nor unconscionable. Accordingly, we affirm the trial court's June 2023 Orders on summary judgment.

## (2) The July 2023 Order Denying Brooks' Motion to Amend Complaint

[55] We next turn to Brooks' challenge to the July 2023 Order. Brooks argues that the trial court abused its discretion by denying her motion to amend her complaint under Trial Rule 15(A). We agree.[8]

[56] Indiana Trial Rule 15(A) provides, in relevant part, that a party "may amend [her] pleading once as a matter of course" if within a certain time frame. Ind. Trial Rule 15(A). "Otherwise a party may amend [her] pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires." *Id.* "It is well settled that although the trial court

---

[8] As a preliminary matter, USATF asks this Court to reconsider our motions panel's decision to deny USATF's motion to dismiss Brooks' appeal of the July 2023 Order denying Brooks' motion to amend her complaint. While it is within this Court's "inherent authority" to revisit a decision of the motions panel, we decline USATF's request to do so in this case. *See Haggerty v. Anonymous Party 1*, 998 N.E.2d 286, 293 (Ind. Ct. App. 2013) (explaining that our Court has the inherent authority to reconsider any decision of the motions panel while an appeal remains pending). *See also Robertson v. Robertson*, 60 N.E.3d 1085, 1089 (Ind. Ct. App. 2016) ("We are reluctant to overrule orders issued by the motions panel unless we have determined that there is clear authority establishing that the motions panel erred."); *In re Adoption of O.R.,* 16 N.E.3d 965, 971 (Ind. 2014) (discussing consideration of "extraordinarily compelling reasons" for determining whether an appeal should be considered on its merits).

retains broad discretion in granting or denying amendments to pleadings, amendments should be liberally allowed, while giving proper regard for any prejudice to the nonmoving party." *Matter of Sarkar*, 84 N.E.3d 666, 675 (Ind. Ct. App. 2017). *See also Palacios v. Kline*, 566 N.E.2d 573, 575 (Ind. Ct. App. 1991) ("Amendments to the pleadings are to be liberally allowed in order that all issues involved in a lawsuit are presented to the jury."). We review a trial court's decision on a motion to amend a complaint for an abuse of discretion, "which occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or when the trial court has misinterpreted the law." *Rusnak*, 55 N.E.3d at 842. "We judge an abuse of discretion by evaluating several factors, including undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiency by amendment previously allowed, undue prejudice to the opposing party by virtue of the amendment, and futility of the amendment." *Id.* (cleaned up). Ultimately, we are guided by "[t]he stated policy of this [C]ourt and our [Indiana] Supreme Court[, which] is to freely allow such amendments in order to bring all matters at issue before the court[,]" and we are cognizant that "[l]eave to amend should be granted unless the amendment will result in prejudice to the opposing party." *Rusnak*, 55 N.E.3d at 843.

[57]     Here, on June 21, 2023, the trial court issued its two summary judgment orders on Brooks' declaratory judgment claim in the June 2023 Orders, essentially concluding that the Waiver and Indemnity Agreement was enforceable under Indiana law. Two days later, on June 23, 2023, Brooks filed her motion to

amend her complaint to add claims of negligence, gross negligence, recklessness, and willful and wanton conduct and to add two defendants. When the trial court denied Brooks' motion to amend her complaint in the July 2023 Order, it did not provide any specific explanation on its reasoning for denying Brooks' motion to amend.

[58] The parties do not dispute that Brooks' motion to amend was filed within the statute of limitations for the tort claims contained in her amended complaint. Furthermore, during the oral argument before our Court, USATF conceded that Brooks could have amended her complaint to add her tort claims to her declaratory judgment complaint; however, USATF asserted that Brooks was required to add those tort claims prior to the entry of the June 2023 Orders on summary judgment. Additionally, USATF has also asserted that because Brooks filed her motion to amend her complaint after the entry of the June 2023 Orders on summary judgment, then she could have only filed those new claims under a completely separate cause number.[9] Thus, both of USATF's assertions are based on its argument—which it made to the trial court and which appears the trial court relied upon to deny Brooks' motion to amend her complaint— that the trial court could not grant Brooks' motion to amend her complaint

---

[9] In its appellate brief, USATF asserted that "[i]f Brooks wanted to purse tort claims against USATF (irrespective of the [Waiver and Indemnity Agreement's] enforceability), she needed to file a new cause of action[.]" (USATF's Br. 40).

following the entry of the summary judgment on her declaratory judgment claim because it constituted a final judgment.

[59] In support of USATF's argument that the trial court could not grant Brooks' motion to amend her complaint following the entry of the summary judgment on her declaratory judgment claim, USATF cites to cases in which the plaintiffs sought to amend a complaint well after a final judgment had been entered after a trial. For example, USATF cites to *Jackson v. Russell*, 491 N.E.2d 1017 (Ind. Ct. App. 1986) and *Leeper Elec. Servs., Inc. v. City of Carmel*, 847 N.E.2d 227 (Ind. Ct. App. 2006), *reh'g denied, trans. denied*. In *Jackson*, a plaintiff filed a complaint for tortious interference against a defendant and then recovered a $2 million judgment against the defendant. *Jackson*, 491 N.E.2d at 1019. Thirteen months later, the plaintiff sought to amend his complaint for tortious interference to add another defendant, and the trial court granted the motion to amend. *Id.* at 1019-20. Our Court reversed the trial court, explaining that the plaintiff's tortious interference claim had already proceeded to a final judgment. *Id.* In *Leeper*, a plaintiff, who had received a $1.12 million judgment on an inverse condemnation, sought to amend its complaint more than two years later to add claims that the trial court had already granted the defendant's motions for judgment on the evidence and directed verdict during the trial. *Leeper*, 847 N.E.2d at 228-31. The trial court denied the plaintiff's motion. *Id.* at 230. Our Court affirmed the trial court's ruling, noting that the plaintiff's "proffered amended complaint contain[ed] claims that [we]re virtually identical to those

that the trial court disposed of by judgment on the evidence and/or directed verdict[.]" *Id.* at 231.

[60] Brooks asserts that "what USATF presented to the trial court (and later to this Court) as a hard and fast rule against allowing amendments after a summary judgment is not accurate." (Brooks' Br. 30). Brooks further argues that the "trial court should have allowed [the] amendment in this case where no discovery ha[d] been taken, the case had only been pending for a matter of months, and the only proceedings prior to the motion to amend were in relation to competing motions for summary judgment regarding the enforceability of a waiver and indemnification agreement[.]" (Brooks' Br. 23). Additionally, Brooks contends that "authorizing [her] first amendment of her Complaint at this early stage in the lawsuit before any discovery was in the interest of justice and resolving claims on the merits[.]" (Brooks' Br. 23).

[61] We agree with Brooks. The *Jackson* and *Leeper* cases relied upon by USATF are inapposite to the facts of this case. The plaintiffs in those cases each had received a final judgment following a trial on the respective plaintiff's claims and then sought to amend their complaints—more than one year later—on the very claims that had already been adjudicated on the merits at trial.

[62] Here, however, Brooks is not attempting to raise previously adjudicated claims in her amended complaint. The June 2023 Orders on summary judgment had "the force and effect" of final judgments, under INDIANA CODE § 34-14-1-1, on Brooks' declaratory judgment claim. *See* I.C. § 34-14-1-1. The June 2023

Orders were final judgments on the declaratory judgment claim, but they were not final judgments on the merits of the tort claims that Brooks sought to bring in her amended complaint.

[63] Moreover, we also reject USATF's argument that Brooks could only file her tort claims in her amended complaint under a separate cause number. Our supreme court has explained that the "intent behind many of our Rules of Trial Procedure is the avoidance of multiple lawsuits, which, along with judicial economy and efficiency, has always been of significant concern in the development of our legal principles." *ResCare*, 184 N.E.3d at 1152 (cleaned up). "In furtherance of these principles, our Trial Rules encourage liberal joinder of claims and remedies." *Id.* Our supreme court also explained that "[t]his philosophy is evidenced by the broad scope of Trial Rule 18(A), which allows a 'party asserting a claim for relief . . . [to] join, either as independent or as alternate claims, as many claims, whether legal, equitable, or statutory as he has against an opposing party.'" *Id.* (quoting T.R. 18(A)).

[64] In *ResCare*, a plaintiff petitioned for judicial review with the trial court and also filed a claim for declaratory judgment. The trial court declined to rule on the plaintiff's declaratory judgment claim, in part, because the plaintiff had not filed a separate complaint for declaratory judgment in a separate cause from his judicial review cause. The Indiana Supreme Court reversed the trial court's ruling. Our supreme court explained that "Indiana generally disfavors multiple lawsuits involving similar issues" and determined that "[t]he suggestion that [the plaintiff] needed to file a separate complaint [wa]s flawed[] and [was] in

direct opposition to our judicial system's principles of judicial economy and the avoidance of multiple lawsuits where possible." *ResCare*, 184 N.E.3d at 1152. Additionally, our supreme court stated that "[w]hile [the plaintiff] could have filed th[e] declaratory judgment request as a separate action, it did not **have** to do so" and that "[t]o hold otherwise would needlessly incentivize numerous lawsuits on related issues." *Id.* (emphasis in original).

[65] Our review of the record before us reveals that there was no undue delay by Brooks and no prejudice to USATF by Brooks filing her motion to amend. From the time that Brooks first filed her initial declaratory judgment complaint, she made it abundantly clear to USATF and the trial court that she intended to file tort claims against USATF. Indeed, the purpose of Brooks filing her declaratory judgment complaint was to ascertain the meaning and extent of the Waiver and Indemnity Agreement under Indiana law before filing her tort claims. *See Mid-Century*, 966 N.E.2d at 688 (explaining that "[t]he primary purpose of declaratory relief is to permit a plaintiff to obtain a declaration of its rights and liabilities before proceeding with a course of conduct for which it might be held liable") (cleaned up). Brooks filed her motion to amend to add her tort claims to her complaint within the statute of limitations for those claims and two days after the trial court entered the June 2023 Orders on summary judgment on her declaratory judgment claim. Because there was no undue delay by Brooks or prejudice to USATF, we conclude that the trial court abused its discretion when it denied Brooks' motion to amend her complaint to add her tort claims. *See, e.g.*, *Rusnak*, 55 N.E.3d at 844 (holding that the trial court had

abused its discretion by denying the plaintiffs' motion to amend their complaint to add an additional claim where there was no prejudice to the defendants).[10] Accordingly, we remand this case to the trial court for further proceedings.[11]

Affirmed in part, reversed in part, and remanded.

May, J., concurs.
Brown, J., concurs in part, dissents in part with opinion.

ATTORNEY FOR APPELLANT

William Bock, III
Kroger, Gardis & Regas, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Crystal G. Rowe
Kightlinger & Gray, LLP
New Albany, Indiana

John B. Drummy
Jeffrey D. Hawkins
Kightlinger & Gray, LLP
Indianapolis, Indiana

---

[10] We also reject USATF's argument that the trial court did not abuse its discretion by denying Brooks' motion to amend her complaint based on the futility of adding her tort claims. Essentially, USATF contends that either Brooks would not be able to prove her tort claims or that she was precluded from bringing some of her claims. If USATF has challenges to Brooks' tort claims, it can raise any such challenges to the trial court in a motion for summary judgment or other motion on Brooks' tort claims.

[11] We direct the trial court to allow USATF and any additional defendants time to file their respective answer to Brooks' amended complaint.

**Brown, Judge, concurring in part and dissenting in part.**

[67] I fully concur with my colleagues that the trial court did not err in its ruling on the parties' summary judgment motions regarding the enforceability of the Waiver and Indemnity Agreement under Indiana law. However, I disagree with their conclusion that the trial court abused its discretion in denying Brooks' motion to amend her complaint.

[68] As noted by the majority, on June 21, 2023, the trial court issued its two summary judgment orders on Brooks' declaratory judgment claim, concluding that the Waiver and Indemnity Agreement was enforceable under Indiana law. Brooks filed her motion to amend her complaint two days later. The majority states that, although the trial court did not provide any specific explanation or its reasoning in denying the motion to amend, it appears the court denied the motion because it believed it "could not grant Brooks' motion to amend her complaint following the entry of summary judgment on her declaratory judgment claim because it constituted a final judgment." Slip op. at 36-37. I believe the trial court got it right.

[69] During oral argument before our Court, USATF conceded that Brooks could have amended her declaratory judgment complaint to add her tort claims, but it maintained that she was required to do so prior to the entry of final judgment, in this case, summary judgment. To be clear, the parties agree that the entry of summary judgment on Brooks' declaratory judgment complaint was a final judgment.

[70] This Court has previously said, quite clearly and succinctly, that after final judgment has been entered, "there is nothing left to amend." *Leeper*, 847 N.E.2d at 231; *accord Jackson*, 491 N.E.2d at 1019 (observing that after final judgment, the "case was over. There was nothing left to amend" and holding that "a plaintiff may not seek to amend his complaint after judgment unless he first has that judgment vacated or set aside under T.R. 59 or T.R. 60"). I am not persuaded by the majority's attempt to qualify this statement as dependent upon the case proceeding to judgment following trial, as opposed to the entry of summary judgment, as occurred here. In short, a final judgment is a final judgment.

[71] In my view, Brooks could have filed her motion to amend her declaratory judgment complaint to add her tort claims against USATF any time prior to the trial court's entry of final judgment and, pursuant to Ind. Trial Rule 15(A), such motion to amend would have been granted. However, after the trial court entered final judgment, thereby disposing of her sole pending claim against USATF, Brooks' only options were to seek to have that judgment vacated or set aside or to file her tort claims under a separate cause number. Her strategic reasons for failing to do so prior to the running of the statute of limitations are not our concern. The fact remains that at the time Brooks filed her motion to amend, final judgment had already been issued and she had filed no motion to vacate or set aside that judgment. The trial court properly denied the motion to amend as there was nothing left for the court to amend as the complaint was at that point a nullity.

[72] Upon review of the record, which includes the oral argument held before this Court, and in light of our well-settled standard of review, I cannot say that the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or that the court has misinterpreted the law. Therefore, I respectfully dissent from the majority's resolution of this issue and would find no abuse of discretion in the trial court's denial of Brooks' motion to amend her complaint.